GATT, APPELLANT, *v.* GEDEON ET AL., APPELLEES.

(No. 47824—Decided October 9, 1984.)

*Paul Kukuca,* for appellant Gregory Gatt.

*Alan Corso,* for appellee Robert Gedeon.

*Vincent DeMelto,* for appellee Laura Gedeon Gatt.

*Linda Schreckinger,* for appellee Shaun Gedeon.

PATTON, P.J. This appeal arises from a judgment entered by the Court of Common Pleas of Cuyahoga County, Juvenile Division, which dismissed with prejudice the action brought by the appellant herein, Gregory Gatt, due to lack of jurisdiction. The facts giving rise to this appeal as contained in the record provide the following.

On November 4, 1972, Robert Gedeon and Laura A. Gedeon were married. On August 6, 1978, a male child, Shaun, was born. On April 27, 1980, Mr. Gedeon had blood samples drawn for a paternity exclusion study made at the Cleveland Clinic by John W. King, M.D., Ph.D. In a letter dated May 6, 1980, the test results showed that Mr. Gedeon was not the child's father.

On or about May 1, 1980, Laura Gedeon filed a complaint for divorce in the Court of Common Pleas of Cuyahoga County, Domestic Relations Division. In her complaint, Laura Gedeon stated that the child was an issue of the marriage despite the contrary blood test results. On April 7, 1981, the divorce was granted. The domestic relations court found the child to be born as an issue of the marriage and granted custody of the child to the mother and an amount of support was incorporated in a separation agreement and made part of the entry.

On February 9, 1982, Laura Gedeon filed a motion to vacate the judgment pertaining to the paternity, visitation and support of Shaun Gedeon since the child was not an issue of the marriage, but rather the result of a sexual relationship with the appellant, Gregory Gatt. On April 23, 1982, Gregory Gatt and Laura Gedeon were married. On June 3, 1982, the motion to vacate was heard before Referee Beverly L. Moffet. The

referee denied the motion to vacate judgment because the evidence did not support relief from judgment and, if fraud occurred, it was perpetrated by Laura Gedeon in the filing of a complaint, the signing of a separation agreement, and the securing of an uncontested divorce. This decision was never appealed by either party to any other court for review from the findings of the referee or from the judgment of the court of common pleas to the court of appeals.

On July 2, 1982, appellant, Gregory Gatt, filed an action to determine father-child relationship in the Court of Common Pleas of Cuyahoga County, Juvenile Division.[1] On September 23, 1982, a motion for ABO blood grouping tests and Human Leukocyte Antigen (HLA) tests was filed. The tests were performed; and, on December 15, 1982, the results of the tests were filed. The tests indicated that Robert Gedeon was excluded as the father and that the probability that the appellant, Gregory Gatt, was the father is between 94.8 and 99.6 percent.

On November 2, 1983, the juvenile court summarily dismissed the action and stated that the juvenile court does not have jurisdiction to hear the cause since the paternity matters were resolved in the domestic relations court and that the parties had not exhausted their appellate review in the case. Therefore, the prior action was *res adjudicata* to an action in the juvenile court.

It is upon the foregoing judgment of the juvenile court that appellant bases this instant appeal and assigns four errors for this court's review:

"I. The trial court erred in its determination that it did not have jurisdiction over this action pursuant to Section 3111.06(A) of the Ohio Revised Code.

"II. The trial court erred in determining that plaintiff-appellant was collaterally estopped from asserting his U.S. Constitutionally protected right of parenthood by the existence of a divorce decree to which plaintiff-appellant was not a party.

"III. The trail [*sic*] erred in recognizing a bar of *res adjudicata* against plaintiff-appellant when it also recognized that the judicial determination said to give rise to the bar was not only based upon collusive misrepresentation but was incorrect.

"IV. The trial court erred in denying plaintiff-appellant due process when he attempted to assert his U.S. constitutionally protected right of parenthood."

I

Assignments of Error II and III will be discussed first for reasons which will become apparent.

Appellant's basic contention is that the prior divorce decree granted by the domestic relations division is not *res adjudicata* as to any action he may bring in the juvenile division under R.C. 3111.04 to determine the father-child relationship. This contention has merit.

Although it was decided prior to the passage of the Uniform Parentage Act (new R.C. Chapter 3111), the case of *In re Mancini* (1981), 2 Ohio App. 3d 124, is directly on point. The facts are identical to the present case with the one exception being that the second husband in *Mancini* filed suit in the probate court division under R.C. 2105.18. In that case, the first husband contested the court's jurisdiction on the ground that the prior divorce decree issued by the domestic relations court was a binding determination of parentage. The court

---

[1] It should be noted that subsequent to the final divorce decree and prior to appellant's filing his action in Juvenile Court, the Uniform Parentage Act (R.C. Chapter 3111) became effective on June 29, 1982.

granted the first husband's motion to dismiss, but that portion of the trial court's decision was reversed on appeal.

On appeal, the court in *Mancini* examined the identity of the parties to the divorce action between the mother and her first husband. The court concluded that the second husband was *not* in any fashion a party or in privity with a party to the divorce action. Neither the second husband nor the child was a party to the divorce proceeding. The court concluded:

"* * * [N]othing indicates that the second husband was in any fashion a party or in privity with a party to the divorce action between the mother and her first husband. Therefore, the probate court erred in finding the prior divorce decree a bar to the second husband's application, which, in effect, challenged * * * [the child's] paternal parentage.

"We note that three other jurisdictions have specifically dealt with the issue of the finality of a finding of paternity in a divorce decree. *State, ex rel. Bentley,* v. *Frenger* (1930), 158 Wash. 683, 291 P. 1089; *A.B.* v. *C.D.* (1971), 150 Ind. App. 535, 277 N.E. 2d 599; *O.F.L.* v. *M.R.R.* (Mo. App., 1974), 518 S.W. 2d 113. In all three cases the courts held that a finding that the subject child was born as issue of the marriage is not *res judicata* as to anyone not a party to the divorce. In particular, the court in *A.B.* v. *C.D., supra* (150 Ind. App.), at 560, declared:

" '* * * The finding that the child "was born as the issue of this marriage" amounts to no more than a finding that he was born to the wife during the marriage, a fact not in dispute in the instant case, nor in the divorce case, so far as the record here reveals. * * *' " *Id.* at 125-126.

The Ohio Supreme Court has declared that there must be privity with the parties or persons in privity with the parties and an identity of issues for a decree to be *res judicata* or to operate as estoppel. See *Johnson* v. *Norman* (1981), 66 Ohio St. 2d 186, 190 [23 O.O.3d 196]; and *Whitehead* v. *General Tel. Co.* (1969), 20 Ohio St. 2d 108 [49 O.O.2d 435]. In *Whitehead,* the court held:

"This court has consistently held that for a judgment or decree to be *res judicata,* or to operate as estoppel, there must be an identity of issues and an identity of parties or persons in privity with the parties. * * *" *Id.* at 114.

"Generally, a person is in privity with another if he succeeds to an estate or an interest formerly held by another. * * *" *Id.* at 115.

"'* * * In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." *Id.* at 112.

"Traditionally it has been held that collateral estoppel applies only to situations in which the party seeking to use a prior judgment and the party against whom it is being asserted were both parties in the original action, or were in privity to such parties. Such holdings are based on the requirement that there be mutuality of estoppel. * * *" *Id.* at 113.

The record in the case *sub judice* is completely void of any evidence of privity between appellant and Laura Gedeon during the divorce proceedings. Both the complaint and the separation agreement state that the child was an issue of the marriage and neither mentions appellant's alleged involvement. Therefore, since appellant was not in privity to the divorce proceedings, the judgment of the domestic relations court was not *res judicata* as to any action appellant may file now in juvenile court pursuant to R.C. 3111.06(A).

Furthermore, even if privity had existed between appellant and Laura Gedeon, appellant's remedy would still have

been in juvenile court because the Uniform Parentage Act was not in effect during the divorce proceedings. Prior to the passage of the Act, the natural father could not file an action in the domestic relations court during a divorce to determine the paternity of the child. Juvenile court would have been appellant's only alternative.

Accordingly, appellant's assignments of error have merit.

## II

Appellant contends that the juvenile court had jurisdiction pursuant to R.C. 3111.06(A) to determine his cause of action. This contention has merit.

Having concluded that the prior divorce decree between the first husband and the mother is not *res judicata* as to appellant, regarding the issue of paternity, we must now determine if appellant can utilize R.C. 3111.04 as a vehicle for determining paternal parentage based on the jurisdiction of the juvenile court found in R.C. 3111.06(A). Subsequent to the passage of the Uniform Parentage Act, the Ohio Supreme Court has had the opportunity to interpret new R.C. Chapter 3111 in the case of *Joseph v. Alexander* (1984), 12 Ohio St. 3d 88. In *Joseph,* the appellant originated his action under R.C. 3111.04 to determine the existence or nonexistence of the father and child relationship. The lower courts had held that the complaint failed to state a claim and that the prayer was contrary to public policy.

The Ohio Supreme Court reversed and remanded the case and held in the syllabus:

"While every child conceived in lawful wedlock is presumed legitimate, such presumption is not conclusive and may be rebutted by clear and convincing evidence that there were no sexual relations between husband and wife during the time in which the child must have been conceived."

Furthermore, the court held, at 90,

that the appellant had alleged sufficient facts to satisfy the requirements of R.C. 3111.04.

R.C. 3111.06(A) provides:

"The juvenile court has original jurisdiction of any action authorized under this chapter. An action may be brought under this chapter in the juvenile court of the county in which the child, the child's mother, or the alleged father resides or is found or, if the alleged father is deceased, of the county in which proceedings for the probate of his estate have been or can be commenced, or of the county in which the child is being provided support by the department of welfare of that county. If an action for divorce, dissolution, or alimony has been filed in a court of common pleas, that court of common pleas has original jurisdiction to determine if the parent and child relationship exists between one or both of the parties and any child alleged or presumed to be the child of one or both of the parties."

Appellant contends that the language found in the above section confers concurrent jurisdiction upon the juvenile court and the domestic relations court to hear actions based under the new Uniform Parentage Act. This contention is only partially correct.

Prior to the passage of the Act, the natural father could not file an action in domestic relations court to determine the paternity of the child during the divorce proceedings between the child's mother and her husband. The second sentence of R.C. 3111.06(A) has eliminated that restriction and requires the natural father to file a paternity action in domestic relations court if he is filing the action *during* the divorce proceedings.

In the case *sub judice,* the Uniform Parentage Act was in effect at the time appellant filed his action in accordance with R.C. 3111.06(A). However, final judgment had already been rendered by

the domestic relations court in the divorce proceedings *prior* to appellant filing his claim. Therefore, since the divorce action was no longer pending, the domestic relations court did not have the necessary jurisdiction to hear the action. In these circumstances, R.C. 3111.06(A) instructs the natural father to file in juvenile court.

Accordingly, appellant's assignment of error is well-taken.

### III

Appellant contends that he was denied a forum in which to assert his constitutionally protected right of parenthood and has therefore been denied due process. This contention is without merit.

Appellant cites *Stanley* v. *Illinois* (1972), 405 U.S. 645, to support his argument that he has a constitutionally protected right to parenthood and that the juvenile court has denied him due process. Appellant's right to parenthood, constitutionally or otherwise, is not at issue, nor does *Stanley* support his position. *Stanley* involved an unmarried father's constitutional right to a hearing on parental fitness and evidence of neglect before his children were made dependents of the state after the mother's death. The United States Supreme Court held that the Illinois statute which denied such a hearing violated the Due Process Clause of the Fourteenth Amendment and denied the father equal protection under the law.

In the present case, the juvenile court did not deny appellant his constitutional right to parentage, but rather refused to hear the claim based on the jurisdictional requirements of R.C. 3111.06(A). That refusal has already been discussed in prior assignments and has been found to be erroneous.

Accordingly, appellant's assignment is without merit.

The judgment of the trial court is reversed, and the cause is remanded to the juvenile court for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

WEBER and WISE, JJ., concur.

WEBER, J., of the Second Appellate District, and WISE, J., of the Fifth Appellate District, sitting by assignment in the Eighth Appellate District.