**BROXTERMAN, Appellee,**

v.

**BROXTERMAN; Ross et al., Appellants.**

[Cite as *Broxterman v. Broxterman* (1995), 101 Ohio App.3d 661.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940091.

Decided March 15, 1995.

*David L. Jenike,* for appellee.

*Moore, Moore & Moore* and *John K. Daggett,* for appellants.

BETTMAN, Judge.

This appeal asks us to determine the right of the legal custodians of a minor child to bring a paternity action in domestic relations court after parentage has been previously determined in a final decree of divorce.

The marriage of Mark and Vicki Broxterman was ended by a decree of divorce entered on December 17, 1984. In the divorce decree was a finding by the court that Joshua Broxterman ("Joshua") was born the issue of this marriage. Custody of Joshua was originally awarded to his mother, Vicki Broxterman. Mark Broxterman was ordered to pay support and was granted visitation rights.

On September 19, 1990, by agreement of the parties and with the approval of the court, permanent custody of Joshua was changed to his maternal grandparents, Jack and Donna Ross ("Custodians" or "the Rosses").

On October 22, 1992, the Custodians filed a post-decree motion in the court of domestic relations for a blood test to determine parentage, supported by an affidavit from Joshua's mother that Mark Broxterman was not Joshua's father.

The Custodians filed this motion pursuant to Civ.R. 35.[1] The trial court dismissed the action on the grounds that the issue of Joshua's parentage had been decided by the divorce decree and was *res judicata*, and that the Custodians had no standing to raise the issue of parentage. The Custodians have appealed from this final order.

It is not clear from the record whether the Rosses are attempting to bring the paternity action only on behalf of Joshua, or for themselves *and* Joshua. We will address both issues.

The Custodians raise one assignment of error, predicated on two interrelated issues. First, they argue that, as Joshua's legal custodians, they do have standing to bring a paternity action. Second, they argue that the determination of parentage in the divorce decree is not *res judicata* as to themselves or to Joshua. As this case raises very complex procedural and legal issues, and because of the increasing number of paternity issues coming before this court, we have *sua sponte* removed it from the accelerated calendar.

■ Before we discuss the merits of this appeal, we note that juvenile courts and domestic relations courts have concurrent jurisdiction over parentage actions. R.C. 3111.06. Ohio law does not limit paternity actions to situations where a child is born out of wedlock. The jurisdiction of the domestic relations court arises in the context of divorce actions, dissolution, and alimony actions. There are cases which hold that once a divorce action is completed, a paternity action must be brought in juvenile court. See *Gatt v. Gedeon* (1984), 20 Ohio App.3d 285, 288, 20 OBR 376, 379–380, 485 N.E.2d 1059, 1063; *Lester v. Moseby* (June 23, 1989), 1989 WL 75729 Richland App. No. CA–2642, unreported; 2 Anderson's Ohio Family Law (1989), Section 10.15. In this case, the paternity action was brought as a post-decree motion, but since other post-decree matters are still pending, we hold that the court of domestic relations retained jurisdiction to hear this matter.

We now address the merits of the sole assignment of error. We begin with the issue of *res judicata*. The syllabus of *In re Gilbraith* (1987), 32 Ohio St.3d 127, 512 N.E.2d 956, holds:

---

1. The Rosses filed a motion, captioned "motion for blood test to determine parentage," in which they requested that the domestic relations court "grant biological testing * * * pursuant to Civ.R. 35" to determine Joshua's parentage. R.C. Chapter 3111 governs parentage actions, however, and sets forth the proper parties and procedures to determine paternity. Specifically, it is R.C. 3111.09, not Civ.R. 35, which governs the genetic testing which can be ordered to determine paternity. As no one challenged the form of the motion, either below or on appeal, we will consider it a proper motion to determine parentage. We note, however, that the proper parties to a paternity action include the mother, the father, the putative father and the child. R.C. 3111.07. Neither the child nor the putative father is a party to the present action, but this problem is not what affects our ultimate decision in this case.

"The doctrine of *res judicata* can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or a legitimation order, thereby barring a subsequent paternity action brought pursuant to R.C. Chapter 3111."

Obviously, the same reasoning would apply in a divorce as in a dissolution, particularly since a divorce proceeding is more adversarial than a dissolution. *Id.* at 129, 512 N.E.2d at 959.

▪ Although the syllabus of *Gilbraith* holds that *res judicata* can be invoked in such circumstances, there still remains the question whether the elements necessary for imposition of the doctrine are present. The doctrine of *res judicata* prohibits parties or their privies from relitigating an issue which has already been litigated and reduced to judgment. *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus; *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph one of the syllabus; *In Re Gilbraith, supra.* The Rosses, as custodians, have now stepped into the shoes of Joshua's mother, who was originally granted custody and who is bound by the finding of paternity in the divorce decree. We hold, therefore, that the Rosses, being in privity with Vicki Broxterman, are barred by *res judicata* from relitigating this issue on their own behalf.

▪ There remains, though, the issue of whether Joshua is in privity with his mother so that *res judicata* may be invoked to bar him, or his legal custodians, from pursuing a paternity action brought on his behalf. While it is generally held that the relationship of a parent and child does not automatically create privity, it is noteworthy that in the cases espousing this principle the interests of the parent and the child were clearly different. See, *e.g., Johnson v. Norman* (1981), 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124 (in paternity action child not in privity with mother seeking only her own expenses related to the pregnancy itself); *Whitehead v. Gen. Tel. Co., supra* (in action involving personal injury to child, interests of parents for loss of services and medical expenses is derivative and not the same as child's claim for damages). In this case, the issue of privity is complicated by the fact that Joshua's interests would seemingly coincide with those of his mother in the divorce action in part, namely on the issue of support, but may diverge on other issues, such as his right to know the identity of his biological father and his potential rights of inheritance from his biological father. Given this potential conflict of interests, we cannot say that, even upon an analysis that looks beyond the nominal parties, Joshua was in privity with respect to his parents in their divorce action. Thus we hold that the trial court was incorrect in ruling that *res judicata* barred Joshua from bringing a paternity action on his own behalf.

Next we address the issue of whether the Rosses have standing to bring a paternity action on Joshua's behalf. There are two aspects of this issue: (1) the Rosses' legal capacity to bring this action on Joshua's behalf, and (2) the court's role in deciding whether, even if the Rosses technically have standing to bring a parentage action on Joshua's behalf, they are doing so in the child's best interest. As we shall discuss more fully, the paramount concern of the trial court must be the best interest of the child to ensure that the child is not being used as a pawn to further separate adult agendas.

With regard to standing, Mark Broxterman argues that, even if a paternity action is allowed, only a guardian *ad litem* can bring such an action on Joshua's behalf, not the Rosses. We disagree. The question of who may bring an action to determine parentage is covered in R.C. 3111.04, which provides, *inter alia*, that such an action may be brought by "the child or the child's personal representative." The Civil Rules are applicable in paternity actions. R.C. 3111.08(A). Pursuant to Civ.R. 17(B), suit may be brought on a minor's behalf by a representative "such as a guardian or other like fiduciary." Even without a duly appointed representative, a minor can still sue by a "next friend." We hold, therefore, that the Rosses, as Joshua's legal custodians, have the legal standing to bring an action on Joshua's behalf.

Mark Broxterman also argues, however, that in bringing this action, the Custodians are acting only in their own self-interest, and not that of Joshua, and are seeking to undermine his relationship with his son. These accusations raise certain overriding, fundamental concerns that cannot be ignored and must be addressed in the broader context of Ohio's parentage laws codified in R.C. Chapter 3111. In so doing, we would like to acknowledge our reliance on the excellent ideas in Note, Uniform Parentage Act (1991), 16 U.Dayton L.Rev. 497.

In adopting a form of the Uniform Parentage Act, Ohio has recognized the importance of a child knowing the identity of his or her biological father. However, there are other interests involved, and they may be different in the context of a divorce than they are in a paternity action in which there has been no marriage. The state, for example, has a strong fiscal interest in seeing to it that children are supported by their parents and not by the state. *Johnson v. Adams* (1985), 18 Ohio St.3d 48, 52, 18 OBR 83, 86–87, 479 N.E.2d 866, 869. In this case, Mark Broxterman, the marital father, has been ordered to pay child support. If he is excluded as the natural father after genetic testing, and the natural father cannot be located, whose interest, and what policy, is being served? The Dayton Law Review article suggests that in cases where the nonmarital father is not the one bringing the paternity action, it is in the state's interest to maintain the marital presumption of paternity to ensure support. 16 U.Dayton L.Rev. at 517–518. For the same reason, in a case such as this, where the whereabouts of the

biological father are described as "unknown," [2] it would seem only logical that it is also in the child's best interest to maintain the marital presumption of paternity.

In addition to economic issues are social ones. A host of questions arise from the possibility of stripping Mark Broxterman of paternity over Joshua. What if Joshua's natural father wants nothing to do with Joshua? What if Joshua wants to continue to consider Mark Broxterman as his father? What if Joshua is too young to understand the importance of the decision at the present time? What if the Custodians are, as Mark Broxterman maintains, acting out of spite? What of Mark Broxterman's emotional and financial commitment to Joshua thus far?

Among the policy considerations underlying the decision in *Gilbraith, supra,* is the recognition that:

"The establishment and maintenance of the various aspects of the relationship between parent and child is a particularly intricate, sensitive, and emotional process with which courts should be reluctant to interfere." *Id.,* 32 Ohio St.3d at 131, 512 N.E.2d at 961.

Similarly, in his concurring opinion in *Hulett v. Hulett* (1989), 45 Ohio St.3d 288, 295, 544 N.E.2d 257, 263, Justice Herbert Brown, worrying about overreliance on genetic tests to determine paternity, wrote:

"At the core of my concern are two failures. First, the statutes with which we must work do not adequately identify the elements of fatherhood. A father-child relationship encompasses more (and greater) consideration[s] than a determination of whose genes the child carries. Sociological and psychological components should be considered. The laws governing adoptions have acknowledged that parentage is comprised of a totality of factors, the least significant of which is genetics. Second, there is a need to separate issues of paternity from issues of fatherhood. The present statutory scheme blurs these issues and lumps them into one pot." [3]

The Ohio Parentage Act is to promote the best interests of the child. 16 U.Dayton L.Rev. at 55. This is consistent with the general principle that, in matters relating to custody and care, a court must give primary consideration to the child's best interest, whether it be in matters of divorce, see, *e.g.,* R.C. 3109.04(A) and 3109.04(B)(1) (eff. November 9, 1994); *Glover v. Glover* (1990), 66 Ohio App.3d 724, 586 N.E.2d 159, custody of children born out of wedlock, see, *e.g., In re Byrd* (1981), 66 Ohio St.2d 334, 20 O.O.3d 309, 421 N.E.2d 1284,

---

**2.** In the affidavit attached to the motion to establish parentage, Vicki Broxterman averred that Joshua's real father is one Gary McMahon, "whereabouts unknown."

**3.** Following *Hulett,* R.C. 3111.03 was amended to add the results of genetic testing to the list of presumptions of paternity. R.C. 3111.03(A)(6).

syllabus; *In re Veselich* (1926), 22 Ohio App. 528, 154 N.E. 55, habeas corpus, see, *e.g., Gishwiler v. Dodez* (1855), 4 Ohio St. 615, syllabus, adoption proceedings, see, *e.g., State ex rel. Portage Cty. Welfare Dept. v. Summers* (1974), 38 Ohio St.2d 144, 67 O.O.2d 151, 311 N.E.2d 6, or juvenile court proceedings, see, *e.g., In re Cunningham* (1979), 59 Ohio St.2d 100, 13 O.O.3d 78, 391 N.E.2d 1034, syllabus.

Even though a child's custodians may have the legal right to bring a paternity action on the child's behalf, such an action, as we have sought to demonstrate, may not be in the child's best interest, either economically, emotionally, or temporally.[4] To protect against this happening, we conclude that the right of an adult to bring a post-decree paternity action on a child's behalf is not an absolute, unfettered right. Rather, the right of adults to bring such an action on the child's behalf is subject to the overriding test of the best interest of the child.

■ Accordingly, we hold that after a decree of divorce or dissolution has been entered which includes an adjudication or agreement as to parentage and parental rights and obligations, a post-decree paternity action cannot be brought on a child's behalf absent an express determination by the court that such an action is in the best interest of the child. To aid in making such a determination, the court should consider the appointment of a guardian *ad litem*. Both the Juvenile Rules and the local domestic relations rules provide for the appointment of a guardian *ad litem*. See Juv.R. 4(B); Loc.R. 10 of the Court of Common Pleas of Hamilton County, Domestic Relations Division. See, also, *Sutherland v. Sutherland* (1989), 61 Ohio App.3d 154, 572 N.E.2d 215 (purpose of a guardian *ad litem* in a paternity action is to protect the child's best interest). The trial court may also wish to make use of the statutory provisions for the appointment of separate counsel for the child, and the right of the court to align the parties. R.C. 3111.07(A).

■ Upon review of the record in this case, there is conflicting evidence regarding the nature of the relationship between Mark Broxterman, the Rosses, and Joshua. Certain findings of the referee lend credence to Mark Broxterman's allegations that the Rosses have been unwilling to accept his fatherhood of Joshua and have not cooperated in facilitating his visitation, while other findings suggest that the Rosses have been cooperative and that Joshua has nonetheless developed a severe aversion to Mark Broxterman, strongly resisting visitation. It is the province of the trial court, as factfinder, to weigh the evidence and

---

4. The statute of limitations in a paternity action is five years from the age of majority. Thus a determination that a paternity action is not presently in the child's best interest would not bar the right to bring such an action at a later time.

resolve this conflict to determine whether the parentage action brought on Joshua's behalf truly serves his best interest.

Because neither the trial court nor the parties had the benefit of the best-interest-of-the-child test that we have enunciated, this matter is remanded to the trial court to determine whether a paternity action is in Joshua's best interest at this time. In deciding this issue, the court shall consider the relationship between the marital father and the child; whether the natural father can be joined as a party to the action; whether the natural father has any interest in Joshua; the question of support for the child; the motives of the Custodians for bringing the action at this time; Joshua's views; and any other facts having a bearing on the child's best interest.

The judgment of the trial court is reversed and the cause remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment accordingly.*

DOAN, P.J., and GORMAN, J., concur.