RANSOME et al., Appellants,

v.

LAMPMAN, Appellee.*

[Cite as *Ransome v. Lampman* (1995), 103 Ohio App.3d 8.]

Court of Appeals of Ohio,
Second District, Miami County.

Nos. 94–CA–20, 94–CA–21.

Decided March 31, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 73 Ohio St.3d 1449, 654 N.E.2d 985.

**10**

---

*Byron K. Bonar,* for appellants.

*Robert A. Pratt,* for appellee.

*Robert N. Schlemmer,* for guardian *ad litem.*

*Gretchen Beers,* for Miami County Child Support Enforcement Agency.

*Randal A. Harvey,* for *amici curiae.*

BROGAN, Judge.

Appellants, Lisa A. Ransome and minor Ashley Ransome, through her duly appointed guardian ad litem, appeal from the decision of the Miami County Court of Common Pleas, Juvenile Division, denying their motion to vacate its prior judgment dismissing a paternity action with prejudice.

On December 23, 1983, Lisa and Ashley Ransome filed a motion to determine parentage and a complaint seeking child support against appellee, Dean Lampman. There was no guardian ad litem or separate counsel appointed to represent the interests of Ashley in the parentage action.

The trial court ordered that the parties submit to blood tests, the results of which revealed a 98.9% probability that Lampman was the biological father of Ashley. No further action was taken on the case for approximately one year.

On February 27, 1985, Lisa Ransome and Lampman entered into a compromise agreement in accordance R.C. 3111.19. Pursuant to the compromise agreement, Lisa agreed to dismiss the pending paternity action with prejudice, and to hold Lampman harmless and indemnify him from any future claim, including any claim of the child, for support or maintenance above the agreed amount. In return, Lampman agreed to pay $15 per week until Ashley reached the age of eighteen, became emancipated, died, or was adopted. Lisa signed the agreement: "Individually and as Mother and Next Friend of Ashley Ransome."

On April 18, 1985, the trial court filed a journal entry of dismissal which stated, "Upon request of the parties and for good cause shown it is ordered that the within cause be and the same hereby is dismissed with prejudice and at the costs of the Defendant herein." The journal entry was approved and signed by the prosecuting attorney and the attorney for the defendant. The journal entry did not expressly incorporate the terms of the compromise agreement.

Lampman complied with his obligation to pay $15 per week for several years. Lisa alleges that Lampman stopped paying in 1990. Lisa further claims that when she tried to enlist the help of the Miami County Child Support Enforcement Agency to enforce the compromise agreement, she was told that they could not enforce the agreement because paternity was not established and child support was not ordered by the court.

On April 27, 1993, Lisa and Ashley Ransome filed a Civ.R. 60(B) motion for relief from judgment wherein they sought to have the trial court's judgment dismissing the paternity action with prejudice vacated. Lisa and Ashley Ransome asserted numerous arguments in support of the motion including the following: (1) It is no longer equitable that the judgment should have prospective effect because Lampman has breached the compromise agreement; (2) the trial

court did not initially approve the compromise agreement as required by R.C. 3111.19; (3) the trial court did not have jurisdiction over the initial paternity action because it was initiated by the prosecutor; (4) the agreement is unfair and offends public policy; (5) no guardian ad litem was appointed to protect Ashley's interests in the initial paternity action; and (6) R.C. 3111.19 is unconstitutional because it denies equal protection to illegitimate children by allowing paternity actions to be settled by compromise agreements.

Lampman filed a motion in opposition to the motion for relief from judgment arguing that Ransome's motion was untimely because it was filed approximately eight years after the initial dismissal of the paternity action with prejudice.

On March 30, 1994, the trial court entered judgment denying Lisa and Ashley Ransome's motion to vacate the judgment. The trial court found that R.C. 3111.19 had been adequately complied with at the time the compromise agreement was entered into by the parties. The court stated that Ashley was not bound by the compromise agreement and could still bring a paternity action in her own name. Additionally, the court stated that the proper remedy for Lisa Ransome to pursue is a breach of contract action in the proper forum. Finally, the trial court found that R.C. 3111.19 is not unconstitutional.

Lisa and Ashley Ransome then filed this timely appeal.

On appeal, Lisa asserts two assignments of error, essentially raising the same arguments as raised in her motion to vacate the judgment. Ashley, through her guardian ad litem, concurs in the arguments raised by her mother. Since we believe that the assignments of error may not be resolved identically with respect to each of the appellants, we will separately address the assignments of error as they relate first to Lisa, then to Ashley.

As her first assignment of error, Lisa raises the following:

"The trial court erred to the prejudice of plaintiff-appellant in overruling her motion for relief from judgment."

In support of this assignment of error, Lisa argues that the trial court erred in overruling her Civ.R. 60(B) motion to set aside the dismissal of the paternity action with prejudice because she is entitled to relief from judgment pursuant to Civ.R. 60(B)(4) and (5) based on several alternative grounds.

Civ.R. 60(B) provides that a party may be relieved from judgment when certain requirements are met. The rule provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

" * * * *

"(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time. * * * "

■ It is firmly established that the trial court has discretion in determining whether to grant a Civ.R. 60(B) motion for relief from judgment. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 520 N.E.2d 564. Thus, a trial court's decision regarding a Civ.R. 60(B) motion will not be reversed on appeal absent a showing of abuse of discretion. The term "abuse of discretion" implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144.

The standard for granting a motion for relief from judgment was set forth by the Ohio Supreme Court in *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, as follows:

"To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *Id.* at paragraph three of the syllabus.

Lisa contends that she has adequately demonstrated these requirements and is thus entitled to relief from judgment.

First, she claims that she is entitled to relief from judgment pursuant to Civ.R. 60(B)(4) because it is no longer equitable for the judgment to have prospective application. In support of this claim, she argues that it is inequitable for the judgment to have prospective application because Lampman has stopped paying the $15 per month due under the compromise agreement, thereby breaching the agreement.

■ R.C. 3111.19, which provides for "compromise" agreements to be entered into by parties to a paternity action, states, in part:

"After an action has been brought and before judgment, the alleged father and the mother, subject to the approval of the court, may compromise the action by an agreement in which the parent and child relationship is not determined but in which a specific economic obligation is undertaken by the alleged parent in favor of the child."

Essentially, the statute allows for the parties to a paternity action to enter into a settlement agreement concerning the action.

The trial court held that Lisa was not entitled to relief pursuant to Civ.R. 60(B)(4) based on its finding that she has a remedy by way of a breach of contract complaint. We agree. Settlement agreements, as binding contracts, may be enforced through a breach of contract action. See *Boster v. C & M Serv., Inc.* (1994), 93 Ohio App.3d 523, 639 N.E.2d 136. We find no abuse of discretion in the trial court's holding.

Lisa next argues that she is entitled to relief from judgment pursuant to the catchall provision contained in Civ.R. 60(B)(5) ("any other reason justifying relief from the judgment") for the following reasons: (1) The trial court did not initially approve the compromise agreement as required by R.C. 3111.19; (2) the agreement is unfair and offends public policy; and (3) a guardian ad litem was not appointed to protect Ashley's interests in the initial paternity action.

Initially, we note that relief under Civ.R. 60(B)(5) should be granted only in extraordinary situations. *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 68 O.O.2d 251, 316 N.E.2d 469. Generally, a movant must demonstrate substantial grounds to obtain relief under this provision. *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 5 OBR 120, 448 N.E.2d 1365. The trial court held that Lisa was not entitled to relief under this provision because the reasons set forth by her were either unsupported by the evidence or not sufficient to support relief from judgment.

Lampman argues that, even if Lisa might otherwise be entitled to relief under Civ.R. 60(B)(5), relief should be denied because she could have raised these same arguments immediately after the initial judgment was entered, and, therefore, did not move for relief from judgment within a reasonable time.

We find no error in the trial court's decision not to grant relief from judgment to Lisa pursuant to Civ.R. 60(B)(5). The trial court specifically found that it properly approved the compromise agreement entered into by the parties. R.C. 3111.19 expressly authorizes such a compromise of a paternity action by the mother and putative father. The record is void of any indication that Lisa was forced or coerced into such an agreement, or that she did not understand the ramifications of entering such an agreement. The fact that Lisa was not experienced in legal matters is not sufficient to support relief from judgment. Further, Lisa's interests were adequately represented by an attorney from the Child Support Enforcement Agency.

Finally, although it is true that the child was not represented by a guardian ad litem in the paternity proceedings, that is not a sufficient reason to

relieve Lisa from a judgment that was a result of her voluntary agreement with Lampman. There is no reason to believe that the appointment of a guardian ad litem would have altered Lisa's agreement with Lampman. We find no abuse of discretion in the trial court's finding that Lisa failed to demonstrate substantial grounds for relief from judgment pursuant to Civ.R. 60(B)(5).

■ Moreover, we note that, in our opinion, Lisa's motion for relief from judgment pursuant to Civ.R. 60(B)(5) was not filed within a reasonable time. Although there is no fixed time period for bringing a motion for relief from judgment under Civ.R. 60(B)(5), the motion must be made within a "reasonable time." Most of the reasons cited by Lisa in support of her motion were in existence immediately after the judgment of the trial court was entered, nearly eight years before she brought the motion for relief. There should be "substantial and compelling reasons" for opening a judgment after such a long period of time. *In re Dissolution of Marriage of Watson* (1983), 13 Ohio App.3d 344, 13 OBR 424, 469 N.E.2d 876. We do not find the reason asserted by Lisa—her lack of sophistication regarding legal matters—to be sufficient to establish the reasonableness of the eight year delay.

Finally, Lisa argues that she should be relieved from judgment because the trial court was without jurisdiction to enter the judgment dismissing the action. She claims that the trial court's jurisdiction was never properly invoked in the paternity action because the state, not she, initiated the paternity action.

■ Initially, we note that a judgment granted by a court that is without jurisdiction to rule on the matter before it is void. A motion to vacate a void judgment need not comply with the requirements of Civ.R. 60(B) and may be granted by virtue of the inherent power of the court. *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941; *In re Miller* (1986), 33 Ohio App.3d 224, 515 N.E.2d 635.

Pursuant to the language of R.C. 3111.04 in effect at the time of the filing of the paternity action in this case, an action to determine the existence of paternity may be initiated only by the child, the mother, the putative father, or their respective representatives. The statute has subsequently been amended to include the child support enforcement agency of the county where the child resides as a proper party to initiate a paternity action.

■ Lisa cites *Washington v. Gregory* (Feb. 19, 1985), Clinton App. No. CA84–06–022, unreported, 1985 WL 8179, in support of her argument that a trial court is without jurisdiction to determine a paternity action where the action is initiated by the child support enforcement agency. In *Washington,* the court found that the state, rather than the mother, filed the action. *Id.* Thus, the court held that the trial court was without jurisdiction to rule on the matter. *Id.*

The trial court based its finding on a combination of facts including the following: the mother only named the alleged father under pressure from the prosecutor; the trial court referred to the state as a party to the action; and the state actually argued against the mother in a related contempt action. *Id.*

We find *Washington* to be distinguishable from the present case. In the present case, the only fact that Lisa points to in support of her claim that the state initiated the action is the fact that the prosecutor from the child support enforcement agency signed the complaint. The state was not named as a party to the action, and there is nothing to indicate that the trial court considered the state as the plaintiff in the action. The fact that the prosecutor represented Lisa in the action does not support a conclusion that the state was the plaintiff in the action. Prosecutors are often required to represent plaintiffs in paternity actions where the plaintiff is a recipient of public aid. Such representation, standing alone, does not divest a trial court of jurisdiction. See, generally, *Anderson v. Jacobs* (1981), 68 Ohio St.2d 67, 22 O.O.3d 268, 428 N.E.2d 419. We find no error in the trial court's refusal to vacate its judgment based on lack of jurisdiction. The first assignment of error is overruled as it relates to Lisa Ransome.

Next, we address the first assignment of error in relation to Ashley Ransome. In regard to Ashley's claim, the trial court stated in its opinion that "no action by the mother can prejudice the rights of her child not to become a public charge and to require the father to assist in the child's support. This would require a new action to be brought in the child's behalf to determine paternity and establish support." Clearly, the trial court contemplated that Ashley would be able to file a new paternity action in her own name in the future. However, the trial court failed to expressly relieve Ashley from its prior judgment dismissing the paternity action with prejudice, even though Ashley was specifically named as a plaintiff in the original action. Ashley argues that, without being expressly relieved from the judgment of dismissal of the paternity action with prejudice, she will be barred by the doctrine of *res judicata* from bringing a future action.

We find that the trial court abused its discretion in failing to expressly relieve Ashley from the judgment dismissing the paternity action with prejudice. Although Ashley was named as a party in the original parentage action, we find that her interests were not adequately represented, and, therefore, she should be relieved from the judgment. The Ohio Supreme Court, in *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124, has stated, "An unmarried mother's dismissal of her action under R.C. 3111 with prejudice is not a bar to her minor child's separate common law action for support and maintenance from his putative father." *Id.* at paragraph three of syllabus. The court further reasoned, "Privity does not generally arise from the relationship between parent and child," because the mother's claim and the child's claim are separate

and distinct. *Id.* at 190, 20 O.O.3d at 198–99, 421 N.E.2d at 127. R.C. 3111.04 specifically grants the child an independent right to have parentage determined. See *Stephens v. Paris* (July 12, 1993), Clark App. No. 3024, unreported, 1993 WL 265414.

The record discloses that Ashley was not represented by a guardian ad litem or separate counsel in the paternity action. R.C. 3111.07 provides that "separate counsel" shall be appointed for the child if the court finds that the child's interest conflict with those of the mother. In the present case, Ashley's interests clearly conflicted with those of her mother in the initial paternity proceeding. Public policy dictates that we interpret Ashley's interests to be "those which seek to establish a parent child relationship." *Liptay v. Feruski* (Jan. 13, 1994), Cuyahoga App. No. 64557, unreported, 1994 WL 11323. Lisa Ransome's decision to enter a compromise agreement whereby paternity was not established clearly conflicted with this interest. Further, we find that Ashley's interests were also not adequately represented by the prosecutor in the initial action as it was likely in the prosecutor's interest to have a compromise agreement entered into by the parties.

Lisa Ransome's motivation in compromising the paternity action may have been merely to cooperate with public authorities so that she might continue to receive public assistance for her and her child. Ashley's interest in this litigation was considerably broader than that of her mother. She had the right to know the identity of her father so that she might enjoy the physical, mental, and emotional support of both of her parents during her lifetime, as well as the bundle of rights which accompany the determination of parentage, *e.g.*, inheritance, social security, etc. See, generally, *Dept. of Public Aid v. Liesman*, 218 Ill.App.3d 437, 578 N.E.2d 310, 578 N.E.2d 310 and *Ruddock v. Ohls* (1979), 91 Cal.App.3d 271, 154 Cal.Rptr. 87.

Recently, the Supreme Court of Nevada refused to grant res judicata effect to a consent judgment whereby the parties to the paternity action agreed that the defendant putative father would provide support for the support of his alleged child in return for sealing the determination of paternity. The Court concluded that a consideration of the policies and purposes behind the Uniform Parentage Act required a departure from the otherwise appropriate application of the bar and merger principles of res judicata to preclude an action by the child to determine paternity and compel support. *Willerton v. Bassham* (1995), 111 Nev. 10, 889 P.2d 823.

"It seems apparent, then, that the drafters of the model act envisioned widespread settlement of paternity claims on the basis of the strength and accuracy of blood test evidence, not based upon the mother's willingness to accept a final settlement agreement where the chances of establishing paternity at trial

are weak or precarious. The facts of the instant case illustrate this result. The blood tests conducted during the pretrial proceedings were compelling evidence that Keith might be the father. In the interpretation of blood test results, the results indicated a strong probability that Keith, as compared to the average random Caucasian male, was the father of Zachary.

"If practice follows theory, and most paternity claims are to be settled on the basis of strong evidence, as in the instant case, then the statute would tip overwhelmingly in the alleged father's favor if given preclusive effect on both the issue of paternity and the nonmodifiability of the order. The alleged father would be able to secure a favorable ruling on paternity (a non-determination) even in the face of compelling evidence, and would also secure a 'frozen' obligation of support. The mother and child would obtain support but without the option to modify the order. These results would obtain from a desire to avoid the 'inconvenience and embarrassment' (whose we are not advised) of trial.

"With this as background, we analyze each party's interest in prosecuting a paternity action and seeking to compel support. We discern no persuasive reason why affording preclusive effect to a compromise agreement with the mother would contravene the policies of the act in any substantial fashion with regard to the determination of paternity. Unlike the child, the mother has no additional rights flowing from a determination of paternity beyond the right to receive support for the care of the minor child. If the support provisions are modifiable under the policies of Nevada's Obligation of Support Act, see infra, then there is no independent reason why the mother should retain a right to reinstitute suit on the issue of paternity. Accordingly, a stipulation-based judgment entered into as a result of the compromise procedure of NRS 126.141(1)(b) is binding on the mother and precludes a later action asserting a claim or cause of action to determine paternity.

"A minor child, however, has legal interests that flow from a determination of paternity beyond the right to collect support. Such interests include the right to prosecute an action for wrongful death, a claim under a workmen's compensation act and the right to an inheritance. See, e.g., Harold C. Havighurst, Settlement of Paternity Claims, 1976 Ariz.St.L.J. 461, 469 (citing cases and stating that it 'appears that the answer should be in the negative' when presented with the question whether a prior settlement of a claim for support against a man who denies paternity should be binding upon a minor child). In addition, there is a real dignitary and psychological interest held by the child in being free to ascertain his or her heritage and lineage. For these reasons, we conclude that a minor child is not barred from instituting a later action to determine paternity

when a prior action brought in his name has reached judgment through a stipulated agreement.

"Keith argues that Zachary was represented by a guardian ad litem and that his interests were therefore properly protected. In addition, Keith points to the general provision of NRS 126.141(1) which allows settlement on the recommendation of the judge after the judge has determined 'whether a judicial declaration of the relationship would be in the best interest of the child.' Thus, Keith argues that Zachary's best interest was considered and that the compromise comported with that interest.

"As stated, the judge either made no findings as to Zachary's best interest or the parties have simply failed to include such important findings in the record on appeal. There is also no evidence that the judge first 'evaluated the probability of determining the existence or nonexistence of the father and child relationship in a trial' and then made a determination that a judicial declaration of the relationship would not be in the best interest of the child. See NRS 126.141(1). It rather appears from the record that the parties decided to compromise their suit after receiving blood test results and presented their settlement to the court, which approved it routinely. We normally presume the regularity of district court proceedings in an appeal with an adequate record. See *Stover v. Las Vegas Int'l Country Club*, 95 Nev. 66, 68, 589 P.2d 671, 671–672 (1979); *City of Las Vegas v. Bolden*, 89 Nev. 526, 527, 516 P.2d 110, 111 (1973). However, such a rule was not intended to benefit the party failing to build the record, and we cannot assume on this crucial issue that Zachary's best interest was appropriately considered and determined. In addition, the parties have utterly failed to address Zachary's best interest on appeal. We therefore hold that Zachary is not prevented from instituting a suit to determine paternity." *Id.* at 30–34, 889 P.2d at 829–831.

We further find that Ashley's motion to vacate was filed within a reasonable time. Although the judgment was entered nearly eight years ago, Ashley is quite young and cannot have been expected to have sought relief from the judgment in the interim period. Courts have recognized the importance of relief from judgment when the best interest of the child is at issue. See *Watson, supra.* Undoubtedly, Ashley's best interest is at issue in this action.

The first assignment of error is sustained as to Ashley Ransome.

As her second assignment of error, Lisa raises the following:

"The trial court erred to the prejudice of plaintiff-appellant in declaring that the statute which provides for compromise agreements in paternity actions, Ohio Revised Code 3111.19 is constitutional."

In support of this assignment of error, Lisa argues that the statute unlawfully discriminates against illegitimate children, denying them equal protection of the law. Lisa and the *amici curiae* argue that R.C. 3111.19, which allows for compromise agreements, discriminates against illegitimate children because it does not require the trial court to follow the same guidelines which must be followed when setting child support for marital children. Further, they argue that the provisions for modification also unlawfully discriminate against illegitimate children.

Although these arguments present an interesting issue and have been thoroughly briefed by the parties, we are constrained by the principle that constitutional issues should not be decided unless absolutely necessary. *In re Miller* (1992), 63 Ohio St.3d 99, 585 N.E.2d 396; *Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 4 O.O.3d 390, 364 N.E.2d 852. Thus, we decline to address the merits of these arguments. Pursuant to App.R. 12, we find that this assignment of error has been rendered moot by our disposition of the first assignment of error. Since Ashley Ransome has been relieved from judgment, she will have an opportunity to establish Lampman's paternity and to seek child support from him. R.C. 3111.13(E) expressly provides that in setting the amount of child support after paternity is established, the trial court must follow the same statutory guidelines followed in setting child support for marital children. Thus, Ashley is no longer constrained by the compromise agreement. Appellants' second assignment of error is overruled.

The judgment of the trial court is affirmed as to appellant Lisa Ransome. The judgment of the trial court as to Ashley Ransome is reversed and remanded for further proceedings.

*Judgment accordingly.*

WOLFF and FAIN, JJ., concur.