FITZPATRICK, n.k.a. Dills, Appellee,

v.

FITZPATRICK, Appellee; Dills, Appellant.

[Cite as *Fitzpatrick v. Fitzpatrick* (1998), 126 Ohio App.3d 476.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA97–05–049.

Decided March 2, 1998.

*Sandra Dills, pro se.*

*Timothy J. Kelly,* for appellee.

*Philip J. Blomer,* guardian *ad litem.*

WALSH, Judge.

Intervenor-appellant, Joseph David Dills, represented by Philip J. Blomer, guardian *ad litem,* appeals from the dismissal of his postjudgment motion to intervene in a divorce action.

Defendant-appellee, Gordon Fitzpatrick, and Sandra Fitzpatrick (n.k.a. Dills) were married on May 22, 1985. On September 17, 1985, Mrs. Fitzpatrick filed a complaint for divorce, in which she alleged that she was pregnant with a child of the marriage that was due in January 1986. Although Mr. Fitzpatrick acknowledged paternity of the unborn child in his answer, he contested paternity at a subsequent hearing. On December 13, 1985, the magistrate issued a report, which granted temporary custody of the unborn child to Mrs. Fitzpatrick pending resolution of paternity.

On January 24, 1986, the domestic relations court issued a divorce decree which contained the following provisions:

"The Court further finds, as of the time of the hearing, the Plaintiff is pregnant and expecting a child to be born in January, 1986. The court further finds that

the Defendant intends to dispute the paternity of said child despite having answered acknowledging that the child was a child of the marriage. The Court further finds, that subsequent to this hearing by the presentation of this Entry by the parties, the parties have determined not to contest the issue of paternity and the Plaintiff intends to drop any claim against the Defendant with regard to the child to be born in January, 1986.

"7. The court finds, based upon the representation of the parties as contained in this agreed entry that the child to be born in January, 1986 is not the child of the parties and that the Defendant bears no responsibility for that child for purposes of these proceedings * * * ."

On January 28, 1986, Mrs. Fitzpatrick gave birth to Joseph Dills. On April 1, 1996, Mrs. Fitzpatrick, on behalf of Joseph, filed a complaint to determine parentage in the Clermont County Juvenile Court. Mr. Fitzpatrick subsequently filed a motion to dismiss, and the juvenile court appointed a guardian *ad litem* for Joseph. After a hearing on January 2, 1997, the juvenile court held Mr. Fitzpatrick's motion to dismiss in abeyance so that the guardian could pursue an action in the domestic relations court. On January 9, 1997, the guardian filed a motion in the domestic relations court to intervene in the Fitzpatrick's divorce action. The motion to intervene sought to invoke the continuing jurisdiction of the domestic relations court in order to set aside the provision of the divorce decree relating to paternity.

On March 9, 1997, a magistrate issued a decision finding that the domestic relations court had continuing jurisdiction to address the issue of paternity and allowing intervention. On March 31, 1997, Mr. Fitzpatrick filed objections to the magistrate's decision. The trial judge sustained the objections and overruled the decision of the magistrate. The trial judge found that the domestic relations court did not have jurisdiction to address the paternity issue, since the Fitzpatricks' divorce action was no longer pending.

On appeal, Joseph assigns a single assignment of error:

"The trial court erred to the prejudice of the appellant in finding that the domestic relations court did not have continuing jurisdiction to decide paternity pursuant to a guardian ad litem's motion to intervene under Civil Rule 24(A)."

Joseph argues that the domestic relations court had jurisdiction to address the paternity issue raised in his motion to intervene. R.C. 3111.06(A) provides:

"The juvenile court has original jurisdiction of any action authorized under sections 3111.01 to 3111.19. * * * If an action for divorce, dissolution, or legal separation has been filed in a court of common pleas, that court of common pleas has original jurisdiction to determine if the parent and child relationship exists

between one or both of the parties and any child alleged or presumed to be the child of one or both of the parties."

In *State ex rel. Smith v. Smith* (1996), 110 Ohio App.3d 336, 674 N.E.2d 398, the Eighth District Court of Appeals was presented with facts similar to the present case. In *Smith*, the wife obtained a divorce in 1988, but the divorce decree listed only three of the four children which the wife had claimed were born as issue of the marriage. In 1995, the child support enforcement agency ("CSEA") filed a parentage action in juvenile court, alleging that the ex-husband was the father of the fourth child. The juvenile court determined that the domestic relations court had jurisdiction over the matter pursuant to R.C. 3111.06(A).

On appeal, the CSEA argued that the juvenile court erred by finding that the domestic relations court had jurisdiction to resolve the paternity action. The Eighth District found that while a divorce action is pending, the domestic relations court has jurisdiction to resolve issues of paternity pursuant to R.C. 3111.06(A). *Id.* at 339, 674 N.E.2d at 400–401, citing *Gatt v. Gedeon* (1984), 20 Ohio App.3d 285, 288, 20 OBR 376, 379–380, 485 N.E.2d 1059, 1062–1063. However, where a divorce action is no longer pending, the Eighth District concluded that a domestic relations court does not have the necessary jurisdiction to hear the action and the paternity action must be brought in juvenile court. *Smith*, citing *Gatt* at 289, 20 OBR at 380–381, 485 N.E.2d at 1063. See, also, *Broxterman v. Broxterman* (1995), 101 Ohio App.3d 661, 656 N.E.2d 394; *Lester v. Moseby* (June 23, 1989), Richland App. No. CA2642, unreported, 1989 WL 75729.

In the present case, a final judgment was rendered in the Fitzpatricks' divorce in 1986, approximately eleven years before Joseph filed his motion with the domestic relations court. Thus, the domestic relations court did not have original jurisdiction, pursuant to R.C. 3111.06(A), to address the paternity issue raised in Joseph's motion to intervene. Instead, original jurisdiction belongs to the juvenile court.

Joseph also argues that the domestic relations court had continuing jurisdiction to address the issue of paternity pursuant to R.C. 3105.65(B). R.C. 3105.65(B) provides:

"The court has full power to enforce its decree and retains jurisdiction to modify all matters pertaining to the allocation of parental rights and responsibilities for the care of the children, to the designation of a residential parent and legal custodian of the children, to child support, and to visitation."

Civ.R. 75(I) provides:

"The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6."

In *Carson v. Carson* (1989), 62 Ohio App.3d 670, 577 N.E.2d 391 (Jones, J., dissenting), a divorce decree provided that the husband would pay child support for the two children that were born as issue of the marriage. Nearly five years later, the husband filed a motion to modify the decree and reduce child support based upon evidence that he was not the biological father of one of the children. This court found that a trial court had continuing jurisdiction, pursuant to Civ.R. 75(I), to modify the husband's child support obligation based in part upon clear and convincing evidence that the husband was not the biological father of the child.

As recently explained in *Leguillon v. Leguillon* (1998), 124 Ohio App.3d 757, 707 N.E.2d 571 (Koehler, J., dissenting), this court has limited and distinguished *Carson* in several subsequent cases. See, *e.g., Emery v. Emery* (1995), 101 Ohio App.3d 559, 656 N.E.2d 5 (Koehler, J., concurring in part and dissenting in part); *Johnson v. Webber* (Dec. 17, 1990), Clermont App. No. CA90–05–041, unreported, 1990 WL 208902 (Koehler, J., concurring separately). In *Kleemeyer v. Hummel* (May 6, 1996), Brown App. No. CA95–10–017, unreported, 1996 WL 227381, this court specifically stated that "a motion to revisit paternity is not one of the matters over which a domestic relations court retains jurisdiction under R.C. 3105.65(B)." *Id.* at 13. See, also, *Springer v. Springer* (Dec. 29, 1992), Clark App. No. 2948, unreported, 1992 WL 389943 (holding that Civ.R. 60[B] was the only procedural vehicle to vacate a paternity determination in a divorce decree).

In the present case, Joseph seeks to set aside the portion of the divorce decree which states that he is not the child of Mr. Fitzgerald. Thus, unlike the husband in *Carson* who only sought to "modify" his child support obligation, Joseph seeks to "vacate" the divorce decree and revisit the issue of paternity. Accordingly, since R.C. 3105.65(B) provides for the modification only of a divorce decree and *Carson* is inapplicable, we find that the domestic relations court did not have continuing jurisdiction to consider the issue of paternity raised by Joseph.

■ A review of the record reveals that the domestic relations court failed to make a proper parentage determination during the Fitzpatricks' divorce as required by the Ohio Revised Code. A man is presumed to be the natural father of a child if the man and the child's mother have been married to each other, and the child is born within three hundred days after the marriage is terminated by divorce. R.C. 3111.03(A)(1). This presumption can be rebutted only by clear and convincing evidence. R.C. 3111.03(B).

In some instances, a mother and an alleged father may enter into an agreement not to make a paternity determination if the father assumes an obligation to pay child support. R.C. 3111.19. The agreement must be approved by the court and in reviewing the agreement, the court is required to consider the interest of the child and the probability of establishing the existence of a parent and child relationship at trial. R.C. 3111.19.

The Fitzpatricks' agreed entry was insufficient to overcome the presumption of legitimacy in R.C. 3111.03(A)(1). See *Nelson v. Nelson* (1983), 10 Ohio App.3d 36, 10 OBR 44, 460 N.E.2d 653; *Wingenfeld v. Wingenfeld* (Dec. 2, 1993), Cuyahoga App. No. 63942, unreported, 1993 WL 497074. The domestic relations court adopted the parties' agreed entry without holding a hearing and receiving any evidence to rebut the presumption of legitimacy. Further, the parties' agreed entry did not fall within R.C. 3111.19 because the divorce decree made a finding of nonpaternity and Mr. Fitzpatrick did not undertake an obligation for child support. Thus, the parentage determination in the divorce decree was improper and failed to satisfy the requirements of the Ohio Revised Code.

■ Joseph argues that if we find the domestic relations court does not have jurisdiction to set aside the improper paternity determination in the divorce decree, we will be ignoring his best interests and allowing his mother to stipulate away his legitimacy. However, Joseph is not "bound" by the finding of illegitimacy in the divorce decree and his best interests may still be protected by bringing a separate parentage action in the juvenile court.[1]

■ The right of a child to bring an action to establish paternity is separate and distinct from a mother's right to bring such an action. *Cornell v. Brumfield* (1996), 115 Ohio App.3d 259, 264–265, 685 N.E.2d 270, 273–275; *Rees v. Heimberger* (1989), 60 Ohio App.3d 45, 46, 573 N.E.2d 189, 191–192. Thus, where a mother enters into agreement not to establish paternity with an alleged father pursuant to R.C. 3111.19, the child is not bound by the agreement and may subsequently bring a paternity action against the alleged father. *Cornell* at 264–265, 685 N.E.2d at 273–275; *Ransome v. Lampman* (1995), 103 Ohio App.3d 8, 16–17, 658 N.E.2d 313, 318–319. A settlement agreement satisfies only the

---

1. Even if we found that the domestic relations court retained jurisdiction, Joseph's motion to intervene could still have been properly denied. Since Joseph's action was dismissed based upon a lack of jurisdiction, the domestic relations court did not reach the merits of Joseph's motion to intervene. However, "intervention is seldom granted after judgment is entered unless the intervenor has no other alternative remedy and intervention is the only way to protect the intervenor's rights." *Kleemeyer v. Hummel* (May 6, 1996), Brown App. No. CA95–10–017, unreported, 1996 WL 227381, citing *Likover v. Cleveland* (1978), 60 Ohio App.2d 154, 159, 14 O.O.3d 125, 128, 396 N.E.2d 491, 494–495. Since Joseph can file a parentage action in the juvenile court, he has an alternative remedy to protect his rights.

mother's claim and cannot prejudice the rights of a child. *Id.* See, also, *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 676 N.E.2d 946.

In the present case, the divorce decree contained an agreement of nonpaternity that was made between Mr. and Mrs. Fitzpatrick. Joseph was not a party to the agreement and his interest in establishing a parent-child relationship was ignored by the domestic relations court. Thus, the agreement in the divorce decree relates only to the claims of Mrs. Fitzpatrick, and a postdecree paternity action on Joseph's behalf may be brought in the juvenile court to protect his best interests. See *Broxterman*, 101 Ohio App.3d at 667, 656 N.E.2d at 398–399.

■■■ *Res judicata* will not bar Joseph from bringing a parentage action in the juvenile court. The *res judicata* doctrine encompasses both "estoppel by judgment," also referred to as "claim preclusion," and "collateral estoppel," also referred to as "issue preclusion." *MetroHealth Med. Ctr. v. Hoffmann–LaRoche, Inc.* (1997), 80 Ohio St.3d 212, 216, 685 N.E.2d 529, 533. Estoppel by judgment prevents a party from relitigating the same cause of action after a final judgment has been rendered on the merits as to that party. *Id.* at 217, 685 N.E.2d at 533–534. Collateral estoppel prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a previous suit. *Id.*

■■■ The Ohio Supreme Court has held that the doctrine of *res judicata* can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or legitimation order. *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 512 N.E.2d 956, syllabus. However, *res judicata* applies only where there is an identity of issues and an identity of parties or persons in privity with parties. *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 190, 20 O.O.3d 196, 198–199, 421 N.E.2d 124, 126–127; *Payne*, 111 Ohio App.3d at 587, 676 N.E.2d at 950–951.

■■■ In the present case, a parentage action in the juvenile court would be brought on behalf and for the benefit of Joseph. Since Joseph was not a party to the prior divorce action between the Fitzpatricks, the identity of the parties would not be the same. Further, privity generally does not arise from the mere relationship of parent and child, especially when the interests of the parent and child are clearly different. See *Johnson* at 190, 20 O.O.3d at 198–199, 421 N.E.2d at 126–127; *Broxterman*, 101 Ohio App.3d at 664, 656 N.E.2d at 396–397. Joseph's interest in establishing whether Mr. Fitzpatrick was his biological father was not considered during the Fitzpatricks' divorce and clearly conflicted with the interests of Mrs. Fitzpatrick. Thus, Joseph was not in privity with his mother and *res judicata* will not preclude Joseph from bringing a parentage action in the juvenile court. See, also, *Cornell*, 115 Ohio App.3d at 264–265, 685 N.E.2d at 273–275; *Payne*, 111 Ohio App.3d at 588, 676 N.E.2d at 951–952.

 Pursuant to R.C. 2151.23(B)(2), a juvenile court has jurisdiction to "determine the paternity of any child alleged to have been born out of wedlock." In the present case, Joseph was born shortly after Mr. and Mrs. Fitzgerald were divorced. Further, Mr. Fitzgerald "alleged" that he was not the biological father of Joseph during the divorce proceedings and the divorce decree stated that Joseph was not the parties' child. Therefore, Joseph was "alleged to have been born out of wedlock" and the juvenile court will have jurisdiction over his paternity action.

Based upon the foregoing, we conclude that the domestic relations court lacked jurisdiction to address the paternity issue raised by Joseph, and the guardian must file Joseph's paternity action in juvenile court. Accordingly, the domestic relations court did not err by dismissing Joseph's motion to intervene, and Joseph's sole assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., concurs in judgment only.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

Joseph wants the record to reflect the facts of his birth, rather than the fiction created by his mother's decree of divorce.

The juvenile court stalled determination of paternity on jurisdictional grounds. Now the majority holds that the domestic relations division does not have the jurisdiction to resolve the problem.

Joseph attempted intervention in this cause to "modify" or "vacate" that portion of the decree which created the problem confronting him.

It appears to me that a paternity action in juvenile court could tangentially be a solution. However, upon proper evidence the domestic relations court has continuing jurisdiction to set the record straight. Therefore, I would reverse the judgment of the trial court and remand the cause to the trial court for evidentiary hearing and an appropriate modification of the decree establishing parentage and allocation of parental rights and support for Joseph. Accordingly, I respectfully dissent.