[Cite as *Dawson v. Dawson*, 2009-Ohio-6029.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### UNION COUNTY

TIMOTHY D. DAWSON,                                    CASE NO. 14-09-08

   PLAINTIFF-APPELLANT,

  v.

STEPHANIE DAWSON,

   DEFENDANT-APPELLANT,                          O P I N I O N

  and

JON STOUT,

   DEFENDANT-APPELLEE.

---

IN THE MATTER OF:                                    CASE NO. 14-09-10

K.S.

[STEPHANIE DAWSON - APPELLANT,                      O P I N I O N
TIMOTHY DAWSON - APPELLANT].

---

IN THE MATTER OF:                                    CASE NO. 14-09-11

N.S.,

[STEPHANIE DAWSON - APPELLANT,                      O P I N I O N
TIMOTHY D. DAWSON - APPELLANT].

**IN THE MATTER OF:**                    **CASE NO. 14-09-12**

**T.S.,**

**[STEPHANIE DAWSON - APPELLANT,          O P I N I O N**
**TIMOTHY D. DAWSON - APPELLANT].**

**Appeal from Union County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 200440051, 20630014, 20630015, 20630013**

**Judgments Affirmed**

**Date of Decision:  November 16, 2009**

**APPEARANCES:**

*Elizabeth N. Gaba* **for Appellants**

*Gregg R. Lewis* **for Appellee**

**PRESTON, P.J.**

{¶1} Appellants, Timothy D. Dawson (hereinafter "Timothy") and Stephanie Dawson (f.k.a. Stephanie Stout)(hereinafter "Stephanie"), appeal the judgment of the Union County Court of Common Pleas, Juvenile Division, which

affirmed and adopted the magistrate's decision. For the reasons that follow, we affirm.

**{¶2}** The procedural history of this case is long, convoluted, and involves two different divisions of the Union County Court of Common Pleas. Appellee, Jon Stout (hereinafter "Jon") and Stephanie were married on December 2, 1989, and during the marriage three children were born: Nathan (d.o.b. 10/15/1991), Trevor (d.o.b. 12/02/1993), and Kylie (d.o.b. 4/26/1998). It is undisputed that during the course of the Stouts' marriage, Stephanie had an extra-marital affair with Timothy, became pregnant, and gave birth to Nathan in October of 1991. While a blood test taken during the Stouts' marriage revealed inconclusive results as to the paternity of Nathan, a subsequent DNA test (discussed below in further detail) indicated that Timothy was the biological father of Nathan.

**{¶3}** On September 1, 1998, Jon and Stephanie terminated their marriage by dissolution decree, and a shared parenting plan was adopted pertaining to the three children in the Union County Court of Common Pleas, Domestic Relations Division. On May 7, 1999, Jon moved to modify the shared parenting plan; in addition, sometime in May of 1999, Timothy and Stephanie were married. On June 28, 1999, Stephanie moved to terminate the shared parenting plan and reallocate their parental rights, in particular requesting to be named the sole residential parent for the three children. Subsequently, on July 29, 1999, Jon also

filed a motion to terminate the shared parenting plan and for reallocation of parental rights, specifically requesting to be named the sole residential parent for the three children.

{¶4} On August 31, 1999, Timothy filed a motion to be joined as a third party to the dissolution for reallocation of parental rights and responsibilities. In addition, on September 1, 1999, Timothy moved for a relief of the judgment from the divorce decree pursuant to Civ.R. 60(B). Timothy's motions were based on his desire to be acknowledged as Nathan's biological father. On September 17, 1999, the magistrate denied Timothy's motions, terminated the shared parenting plan, and adopted a new shared parenting plan. In particular, under paragraph 19 of the new plan, Timothy was joined as a party under R.C. 3109.051's "significant person" designation with respect to Nathan, and in exchange, Timothy agreed not to file a paternity action, and all parties agreed not to reveal Nathan's true parentage to him until he reached the age of majority.

{¶5} On April 28, 2000, Stephanie filed a Civ.R. 60(B) motion from the judgment of the shared parenting plan entered into on September 17, 1999, specifically requesting the trial court to set aside paragraph 19. On May 24, 2000, Timothy also filed a Civ.R. 60(B) motion for relief from the September 17, 1999 judgment entry. On June 14, 2000, the magistrate overruled both Timothy and Stephanie's Civ.R. 60(B) motions for relief, but ordered that paragraph 19 be

stricken from the plan, stating that Timothy Dawson was free to pursue a paternity action in juvenile court. On June 30, 2000, the trial court adopted the magistrate's decision to excise paragraph 19 from the shared parenting plan, and as a result of its excision, found Timothy's Civ.R. 60(B) motion moot.

{¶6} Subsequently, on June 22, 2000, Timothy Dawson filed a complaint to establish paternity and allocation of parental rights and responsibilities in the Juvenile Division of the Union County Court of Common Pleas. The juvenile court bifurcated Timothy's case: first, determining Timothy Dawson's potential paternity to Nathan; then second, determining any allocation of parental rights and responsibilities Timothy may have with respect to Nathan.

{¶7} Simultaneously, in the domestic relations court, Jon moved to reallocate and terminate the shared parenting plan on August 30, 2000, and on October 16, 2000, the magistrate terminated the shared parenting plan and made Jon the sole residential parent and the legal custodian of all three children. Stephanie filed objections to the magistrate's decision on October 30, 2000, and on January 8, 2001, a hearing was conducted by the domestic relations court on Stephanie's objections.

{¶8} Back in the juvenile court, on March 1, 2001, based on the results from a DNA test, the juvenile court magistrate found that Timothy was Nathan's biological father and that a father-child relationship did not exist between Jon and

Nathan. This decision was adopted and approved by the juvenile court on March 2, 2001.

{¶9} However, soon after the juvenile court's decision, on March 8, 2001, the domestic relations court issued a judgment entry on Stephanie's objections, essentially affirming the magistrate's decision by terminating the shared parenting plan and naming Jon the residential parent and legal custodian of the three children. Stephanie appealed the domestic relations court's decision to this Court on April 6, 2001. On October 17, 2001, we reversed and remanded the case concluding that, although the domestic relations court had listed numerous changes in circumstances, it had failed to make the required specific finding that a change in circumstances had occurred, and that it was in the best interest of the children to terminate the shared parenting plan. No further appeal of the March 8, 2001 judgment entry was taken by either party.

{¶10} Following the juvenile court's decision regarding Timothy's paternity, hearings were conducted on the remainder of Timothy's complaint (the reallocation of parental rights). On April 27, 2001, after examining the evidence and testimony, the juvenile court found, pursuant to the Ohio Supreme Court's decision in *In re Perales* (1977), 52 Ohio St.2d 89, 369 N.E.2d 1047, that Timothy had abandoned Nathan and, thus, was an unsuitable parent. The juvenile court then awarded Jon legal custody of Nathan, and visitation rights were afforded to

Timothy and Stephanie. In addition, Timothy was ordered to pay child support for the support of Nathan. Timothy then appealed to this Court, but only raised the issue of whether the juvenile court had erred in finding that he had "abandoned" Nathan. This Court affirmed the juvenile court's decision on March 31, 2003.

{¶11} We also note that prior to our decision on March 31, 2003, with respect to Timothy's appeal, this Court received a writ of prohibition from Stephanie asking this Court to stop the domestic relations court from further rendering orders with respect to Nathan claiming that the juvenile court had sole jurisdiction over Nathan. This Court dismissed the writ on June 4, 2002, stating that the two courts had concurrent jurisdiction since the domestic relations court had specifically retained jurisdiction in its judgment entry.

{¶12} Filings in both courts ceased until December 6, 2005, when Timothy and Stephanie moved for an ex parte emergency order for custody of the three children in the juvenile court. On January 6, 2006, the domestic relations court certified the case to the juvenile court. On January 26, 2006, Stephanie and Timothy were granted temporary custody of the three children, but on February 15, 2006, the children were returned to Jon. On May 3, 2006, Nathan was returned to the custody of the Stephanie and Timothy. Then, on May 12, 2006, Jon filed a motion to reopen the issue of child support. The parties reached an agreement on October 23, 2006, which was journalized as a magistrate's decision

on October 24, 2006, that named Timothy and Stephanie as the sole custodial and residential parents of Nathan. The magistrate's decision regarding the custody of Nathan was adopted by the juvenile court on October 24, 2006. Hearings on the issue of the reallocation of parental rights with respect to Kylie and Trevor, child support, contempt of court, and attorney's fees were conducted on October 23-25, 2006. On November 2, 2006, with respect to the custody of Kylie and Trevor, the magistrate found that a change of circumstances did not exist which would warrant a change in custody; and thus, the magistrate reinstated the domestic relations court's order issued on March 8, 2001 (which had declared Jon the residential parent and legal custodian of Kylie and Trevor). This decision was adopted and approved on November 13, 2006, by the juvenile court.

{¶13} On November 7, 2007, the magistrate entered a decision with respect to the issue of child support, contempt of court, and attorney's fees. With respect to the issues presented in this appeal, the magistrate found the following:

> 1. As the natural parents of Nathan, Timothy and Stephanie each had a separate duty to provide support for Nathan, whereas Jon, who was a non-parent/non-relative, did not bear such an obligation.
> 2. For purposes of any potential child support orders, Jon should not be considered voluntarily underemployed.
> 3. In its April 2001 order, the juvenile court had ordered Timothy to pay for child support for the care and benefit of Nathan and that the Child Support Enforcement Agency should conduct administrative proceedings to calculate child support. However, due to Timothy's appeal on the April 2001 order, the administrative proceedings to calculate child support were stayed, and were never

-8-

re-initiated even after the order had been affirmed by this appellate court.

4. Despite the fact that neither party fully litigated the issue of Timothy's child support prior to 2006, the stayed child support proceedings did not preclude the children from enjoying the support of their natural parents.

5. Timothy owed Jon child support for the benefit of Nathan from the date he filed his original paternity complaint (June 22, 2000) until the date when Nathan was consistently and continuously removed from Jon's custody (May 3, 2006).

6. Stephanie was obligated to pay child support for the care and benefit of Nathan pursuant to the March 8, 2001 domestic relations court order, but since Nathan was consistently and continuously removed from Jon's custody, Stephanie's obligation to pay for the child support of Nathan terminated effective May 3, 2006.

7. Because Jon was the sole residential and legal custodian of Nathan from 2000 until May 2006, he was to receive the tax dependency exemption for Nathan for 2000, 2001, 2002, 2003, 2004, and 2005. Likewise, because Stephanie and Timothy were the named the residential and legal custodians of Nathan in 2006, they were to receive and share the tax dependency exemption for Nathan from 2006 and on: Stephanie receiving the exemption on the even-numbered years, and Timothy receiving the exemption on the odd-numbered years.

8. Stephanie was ordered to pay support for the care and benefit of Kylie and Trevor.

(Nov. 7, 2007 Mag. Dec.). Objections were timely filed by both Stephanie and Timothy. In addition, on December 10, 2008, Stephanie and Timothy filed a motion to retroactively and prospectively re-examine child support based on new evidence they had discovered concerning an additional source of Jon's income. Ultimately, on March 31, 2009, the juvenile court issued a judgment entry affirming the magistrate's decision, and overruling Stephanie and Timothy's motion to re-examine child support.

{¶14} Timothy and Stephanie now appeal and present identical briefs to this Court and the following six assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO DETERMINE THAT THE LAW OF THE CASE FOR 98DR-0141, WHICH BECAME 20630014 UPON CERTIFICATION, WAS THAT JON STOUT WAS THE LEGAL FATHER OF NATHAN STOUT, WHILE THE LAW OF THE CASE FOR 20040051, WAS THAT TIM DAWSON WAS THE LEGAL FATHER OF NATHAN STOUT. AS SUCH, THE TRIAL COURT FAILED TO DETERMINE THAT NATHAN STOUT MAY HAVE TWO LEGAL FATHERS, OR MUTUALLY EXCLUSIVE LEGAL FATHERS, AND FAILED TO USE THAT DETERMINATION IN THEIR CONSIDERATION OF ISSUES IN THIS CASE, INCLUDING WHETHER THEY COULD RETROACTIVELY MODIFY A CHILD SUPPORT ORDER FOR 98DR-0141/20630014 OR PUT ON A CONFLICTING ORDER.**

{¶15} Even though it appears from the language in the assignments of error that Stephanie and Timothy dispute the portion of the trial court's judgment entry that ordered Timothy pay child support to Jon, Stephanie and Timothy failed to raise the issue of Timothy's child support order in their briefs. Because Stephanie and Timothy have failed to argue the issue of the child support order in these assignments of error, and since their second assignments of error predominately concerns the issue of the child support order, we will only address their arguments as they were presented within their briefs.

{¶16} With that stated, essentially, in their first assignments of error, Timothy and Stephanie argue that there are two inconsistent and contradictory judgment entries in this case: two different courts have declared two different individuals to be the "father" of Nathan. In addition, they argue that because the juvenile court's jurisdiction was limited to only prospective actions, not retroactive actions, the juvenile trial court erred when it changed the domestic relations court's finding of parentage that Jon was the father of Nathan to finding that Timothy was now Nathan's father.

{¶17} After the divorce decree was finalized in the domestic relations court, on September 1, 1998, a shared parenting plan was adopted that named Jon and Stephanie both the residential and legal custodians of the three children. Later, in June and July 1999, Stephanie and Jon both filed motions in the domestic relations court for reallocation of parental rights, and both sought to be declared the three children's sole residential and legal custodian. On August 31, 1999, Timothy filed a motion to be joined as a third party to the dissolution for reallocation of parental rights and responsibilities based on the premise that he was Nathan's biological father. While Timothy's motion was not granted, he was added in the modified parenting plan as a "significant person" under R.C. 3109.051; however, while this order granted Timothy visitation rights, it in no way granted Timothy parental rights. (June 14, 2000 Mag. Dec. at 6). Soon

afterwards, the domestic relations court excised the provision of the parenting plan that pertained to Timothy, and declared that since Timothy did not have any privity to the parties as it related to the divorce action in domestic relations court, Timothy's claim for paternity lay in juvenile court. (Id., citing *State ex rel. Smith v. Smith* (1996), 110 Ohio App.3d 336, 674 N.E.2d 398; *In re Mancini* (1981), 2 Ohio App.3d 124, 440 N.E.2d 1232).

{¶18} As a result, on June 22, 2000, Timothy filed a complaint in juvenile court for the purpose of establishing paternity with respect to Nathan. Meanwhile, the issue of the shared parenting plan between Jon and Stephanie was still continuing in the domestic relations court. On October 16, 2000, the domestic relations court magistrate terminated the shared parenting plan and made Jon the sole residential parent and the legal custodian of all three children. Stephanie filed objections to the magistrate's decision on October 30, 2000, and on January 8, 2001, a hearing was conducted by the domestic relations trial court on Stephanie's objections.

{¶19} Back in the juvenile court, on March 1, 2001, the juvenile court magistrate found, as a result of DNA testing, that Timothy was Nathan's biological father, and that a father-child relationship did not exist between Jon and Nathan. This decision was adopted and approved by the juvenile court on March 2, 2001, but on March 8, 2001, the domestic relations trial court issued a judgment

entry on Stephanie's objections essentially affirming the magistrate's decision by terminating the shared parenting plan and naming Jon the residential parent and legal custodian. In its March 8, 2001 judgment entry, the domestic relations court stated that, despite Timothy's assertions that he was Nathan's biological father, at the time of the original dissolution hearing, the domestic relations court had found all three children were born during the marriage of Stephanie and Jon, and therefore, the children were presumed to be Stephanie and Jon's children. (Mar. 8, 2001 JE).

{¶20} Stephanie and Timothy claim in their briefs that once the domestic relations court used the presumption of paternity to find Jon was Nathan's father, and no appeal was taken on that finding, the issue of Nathan's father was finally resolved under the doctrine of res judicata, and that the law of the case dictated that Jon was Nathan's father. They argue that because the juvenile court's jurisdiction is limited to only prospective actions, not retroactive actions, the juvenile trial court erred when it changed the domestic relations court's finding of parentage that Jon was the father of Nathan to finding that Timothy was now Nathan's father. We disagree.

{¶21} The issue of Timothy's parentage action with respect to Nathan was not barred by res judicata, and was legitimately pursued in the juvenile court back in 2000. The Ohio Supreme Court has held that the doctrine of res judicata can be

invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or legitimation order. *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 512 N.E.2d 956, syllabus. However, res judicata applies only where there is an identity of issues and an identity of parties or persons in privity with parties. *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 190, 421 N.E.2d 124; *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 676 N.E.2d 946. Here, while the domestic relations court in its March 8, 2001 judgment entry, found Jon was the parent of Nathan under the statutory presumption in R.C. 3111.03(A)(1), Timothy was never a party to the divorce proceedings, thus he was not bound by that decision, and he was free to pursue his paternity complaint in juvenile court. *Gatt v. Gideon* (1984), 20 Ohio App.3d 285, 485 N.E.2d 1059, paragraph one of syllabus (holding that because the domestic relations court determined that the child was an issue of the marriage, res judicata did not bar any action that the natural father could file in juvenile court pursuant to R.C. 3111.04 and R.C. 3111.06(A) because he had not been a party to the divorce action.) See, also, *Leguillon v. Leguillon* (1998), 124 Ohio App.3d 757, 767, 707 N.E.2d 571 (finding that a child was not precluded from bringing a paternity action under R.C. Chapter 3111 to determine the existence or nonexistence of a father-child relationship, because the child was arguably not a party to the original divorce

action); *Fitzpatrick v. Fitzpatrick* (1998), 126 Ohio App.3d 476, 483-84, 710 N.E.2d 778.

**{¶22}** Furthermore, it is clear that the juvenile court had jurisdiction to decide the issue of paternity pursuant to R.C. 2151.23(B)(2), which gives the juvenile court original jurisdiction to "determine the paternity of any child alleged to have been born out of wedlock." Here, Timothy sufficiently alleged in his complaint that Nathan was "born out of wedlock" by stating that his conception and birth resulted from his and Stephanie's affair. (June 22, 2000 Compl. at 2). This allegation was sufficient to have given the juvenile court proper jurisdiction to hear the matter filed by Timothy. *Nwabara v. Willacy* (1999), 135 Ohio App.3d 120, 127, 733 N.E.2d 267, citing *State ex rel. Willacy v. Smith* (1997), 78 Ohio St.3d 47, 51-52, 676 N.E.2d 109. Thus, on March 1, 2001, when the juvenile court declared that Timothy was Nathan's biological father, and that a parent-child relationship did not exist between Jon and Nathan, and no appeal was taken on this issue, this finding became, and has remained, legally binding.

**{¶23}** We would also note that since August 31, 1999, when Timothy filed a motion to be joined as a third party in the domestic relations court's divorce and shared parenting action, Timothy (and Stephanie) has continuously wanted to be recognized as Nathan's *biological* father and has actively sought to have parental rights to Nathan. Timothy went so far as to establish his biological status by filing

a complaint to establish paternity in the juvenile court, where he was eventually proclaimed to be Nathan's biological father. Even in the motions filed on December 6, 2005, (in which Timothy and Stephanie moved for an emergency ex parte order for custody of the three children and to be named Nathan's sole residential and legal custodian in the juvenile court), Timothy was still asserting that he was Nathan's father. Moreover, Timothy eventually received his biological parental rights to Nathan when the juvenile court upheld the parties' agreement that named Timothy and Stephanie the sole residential and legal custodians of Nathan. *Now* on this appeal, presumably because of the current judgment entry that ordered Timothy to pay child support to Jon (addressed in the second assignment of error), Timothy and Stephanie are trying to claim that Timothy is not really Nathan's father, but rather Jon is Nathan's father in the eyes of the law because of contradictory judgment entries. Even if there were inconsistencies between the domestic relations court and the juvenile court, we find that after about ten years of litigating the issue of paternity, which was predominately the result of Timothy and Stephanie's efforts, the principal of finality[1] also weighs heavily in favor of upholding an otherwise valid juvenile

---

[1] "[f]inality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values.' Finality is particularly compelling in a case involving determinations of parentage, visitation and support of a minor child." *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 175, 637 N.E.2d 914, quoting *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 144-45, 493 N.E.2d 1353.

court determination that Timothy is Nathan's biological father.

{¶24} Therefore, we find that the doctrine of res judicata did not bar any action on the issue of Timothy's paternity with respect to Nathan, and thus, despite the domestic relations court's finding that Jon was Nathan's father in its March 8, 2001 order pursuant to the presumptions under R.C. 3111.03(A)(1), Jon was not conclusively named Nathan's father. In addition, when Timothy filed his paternity action in the juvenile court and it declared that a parent-child relationship existed between Timothy and Nathan, it was doing so pursuant to its statutory authority.

{¶25} Timothy's and Stephanie's first assignments of error are, therefore, overruled.

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND THAT JON STOUT IS ESTOPPED FROM ASKING FOR CHILD SUPPORT FROM TIMOTHY DAWSON DUE TO CLAIM PRECLUSION, ESTOPPEL, WAIVER, LACHES, RES JUDICATA AND INCONSISTENT POSITIONS, AND FURTHER FAILING TO FIND THAT ONLY A MOTHER IS ENTITLED TO RETROACTIVE CHILD SUPPORT IN A PATERNITY ACTION.**

{¶26} In their second assignments of error, Stephanie and Timothy argue that the trial court abused its discretion when it found that Jon was not barred by certain equitable doctrines from receiving child support from Timothy. In particular, Stephanie and Timothy claim that Jon's right to receive child support from Timothy was barred by the doctrines of estoppel, waiver, laches, claim

preclusion, and inconsistent positions. In addition, they claim that Jon was also not allowed to seek retroactive support from Timothy pursuant to R.C. 3111.15.

{¶27} First of all, before we address the merits of the parties' arguments, we find that Stephanie does not have a legal interest in this assignment of error. "It is well established in Ohio that an appeal lies only on behalf of a party aggrieved. Such party must be able to show that he has been prejudiced by the judgment of the lower court." *Love v. Tupman* (1969), 19 Ohio St.2d 111, 113, 249 N.E.2d 794. See, also, *Ohio Sav. Bank v. Ambrose* (1990), 56 Ohio St.3d 53, 56, 563 N.E.2d 1388, fn 3. The appellant "has the burden of showing that his rights have been adversely affected by the trial court's judgment." *Ball v. Ball* (Dec. 30, 1994), 11th Dist. No. 93-P-0054, at *3. Here, even though Timothy and Stephanie are currently married to each other, Stephanie and Timothy are two separate legal parties in this action, and thus have different rights and have been affected differently with respect to each assignment of error. While, in most of the other assignments of error, Stephanie and Timothy have similar (if not the same) interests, this particular assignment of error only concerns Timothy's obligation to pay child support to Jon. Stephanie has always had a separate and distinct obligation to pay child support to Jon, and in fact, she has paid her separate obligation throughout the proceedings. Stephanie cannot show how the juvenile court's order to Timothy to pay child support to Jon has in any way affected or

prejudiced her. Thus, Stephanie cannot be considered an aggrieved party regarding this assignment of error and her second assignment of error is without merit. *In re Jacobberger*, 11th Dist. No. 2003-G-2538, 2004-Ohio-6937, ¶56 (finding appellant had failed to demonstrate how the juvenile court's failure to address appellee's request for a recalculation adversely affected or prejudiced him, thus appellant had no standing).

{¶28} Therefore, Stephanie's second assignment of error is overruled.

{¶29} With respect to Timothy's second assignment of error, we generally review a trial court's decision relating to child support, spousal support and property division, under an abuse of discretion standard. *Marsh v. Weston*, 5th Dist. No. 2007-CA00102, 2008-Ohio-1069, ¶19. The Supreme Court has repeatedly held the term abuse of discretion implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 541 N.E.2d 597.

{¶30} Essentially, this assignment of error stems from Timothy's complaint in juvenile court in June 2000, in which he sought to establish his paternity to Nathan and additionally sought parental rights to Nathan. The juvenile court bifurcated his complaint and first established that a parent-child

relationship did exist between Timothy and Nathan, before then proceeding on to the issue of parental rights and child support.[2] The juvenile court found that Timothy had abandoned Nathan, and thus, was an unfit parent and not entitled to parental rights; in addition, the juvenile court also ordered that Timothy pay support for the care and benefit of Nathan. The juvenile court ordered that the matter of child support be sent to the Child Support Enforcement Agency for purposes of calculations. However, Timothy appealed the juvenile court's judgment entry to this Court only alleging that the court had erred in determining that he was an unfit parent. The proceedings concerning the issue of child support were stayed below pending our decision.[3] Subsequent to this Court affirming the juvenile court's judgment, the child support proceedings were never re-initiated, and Timothy never paid Jon support for the care and benefit of Nathan during the period of time when Jon was Nathan's sole residential and legal custodian. The matter eventually re-surfaced on May 3, 2006, when Nathan was returned to the custody of Stephanie and Timothy, and on May 12, 2006, Jon filed a motion to

[2] The juvenile court noted that pursuant to R.C. 3111.13(C), the magistrate should have addressed the issue of child support in the paternity portion of the case; nevertheless, the juvenile court found that the magistrate was correct in stating that an adjudicated father in a paternity action may be found to owe a duty of child support toward the child, and thus it was not error for the magistrate to have ordered Timothy to pay support for the care and benefit of Nathan.

[3] We acknowledge that when we accepted and ruled on Timothy's appeal, the issue of child support, which had been part of the appealed judgment entry, was technically unresolved, and thus we ruled on what appears to have been a non-final appealable order. Nevertheless, we did rule on the issues that were presented before us at that time, which did not include the validity of the child support order, and the parties failed to raise any objections to our decision. Thus, we find that the issue of the validity of the child support order has now become law of the case. The issue with respect to the calculations of the child support order is still a matter that this Court may review.

reopen the issue of child support. The magistrate had the Child Support Enforcement Agency calculate Timothy's potential child support arrearages using the parties' (stipulated) income from 2000, 2003, and 2006, respectively. (Nov. 7, 2007 Mag. Dec.). Because Jon had been aware of this Court's decision in Timothy's paternity case and could have just as easily have brought the child support issue to the agency's attention prior to 2006, the magistrate decided to use the parties' income in 2000 as the basis for its child support calculations. (Id.). The juvenile court consequently affirmed the magistrate's decision and calculations. (Nov. 7, 2007 Mag. Dec.); (Mar. 31, 2009 JE).

{¶31} Timothy argues that the trial court abused its discretion in failing to find that Jon's claim for child support has been barred by the equitable doctrines of estoppel, waiver, laches, or claim preclusion. (Timothy's Brief at 18). He claims that Jon has known as early as 1994 that he was not Nathan's biological father, thus he has known since then that he has had a right to child support from Timothy. Timothy states that because Jon failed to raise his right to child support during the divorce proceedings, he was precluded, estopped, waived the issue, or was forbidden by laches to pursue such claims for support in juvenile court. We disagree.

{¶32} We find that the juvenile court's finding was not an abuse of discretion because Timothy failed to prove the essential elements of the equitable

defenses. The defenses of estoppel, waiver, and laches are closely related to each other and the three are often asserted together. The elements of estoppel are: "(1) a representation by the party to be estopped; (2) which communicates some fact or state of affairs in a misleading way; (3) which induces reasonable, actual reliance by the second party; (4) who would suffer *prejudice* or pecuniary disadvantage unless the first party is estopped from an otherwise valid right in contradiction to [his] earlier representation." *Myers v. Myers* (2002), 147 Ohio App.3d 85, 92, 768 N.E.2d 1201, citing *Johnson v. Franklin* (1989), 64 Ohio App.3d 205, 210, 580 N.E.2d 1142 (emphasis added).

{¶33} "Waiver is a voluntary relinquishment of a known right * * * [which] applies generally to all personal rights and privileges." *Chubb v. Ohio Bur. of Workers' Comp.* (1998), 81 Ohio St.3d 275, 278, 690 N.E.2d 1267 (citations omitted). A person can voluntarily relinquish a known right by words or by conduct. *State ex rel. Ford v. Cleveland Bd. of Edn.* (1943), 141 Ohio St. 124, 47 N.E.2d 223. The person that owes the duty to perform may assert the defense of waiver if he has *changed his position* as a result of another party's voluntary relinquishment of a known right. *Andrews v. Teachers Retirement Sys. Bd.* (1980), 62 Ohio St.2d 202, 205, 404 N.E.2d 747 (emphasis added).

{¶34} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.

It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence." *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 472 N.E.2d 328, quoting *Smith v. Smith* (1957), 107 Ohio App.3d 440, 443-44, 146 N.E.2d 454. Mere delay in asserting a right does not in and of itself constitute laches. Rather, in order to succeed under the doctrine of laches, "it must be shown that the person for whose benefit the doctrine will operate has been *materially prejudiced* by the delay of the person asserting his claim." *Connin*, 15 Ohio St.3d at 36, quoting *Smith v. Smith*, (1959) 168 Ohio St. 447, 156 N.E.2d 113, paragraph three of the syllabus (emphasis added).

{¶35} After a review of the record, there is absolutely *no* evidence in the record how Timothy would suffer prejudice, or how he changed his position, or even how Timothy has been materially prejudiced by Jon's action to seek child support payments from Timothy. The fact that there was a delay from 2001 until 2006 alone is insufficient to constitute material prejudice. *Myers*, 147 Ohio App.3d at 92, citing *Smith*, 168 Ohio St. at 447. Timothy argues that he did not have to show that he was materially prejudiced because he was precluded by the decision of *Merkel v. Doe* (1993), 63 Ohio Misc.2d 490, 635 N.E.2d 70, from attempting to establish paternity in the domestic relations court. Timothy claims that *Merkel* stands for the proposition that "a putative father may not attempt to infringe upon a family unit in an effort to bring a paternity action under R.C.

3111.04." (Timothy's Brief at 19). While that may be true with respect to the domestic relations court proceedings, Timothy's child support order to Jon was issued by a valid *juvenile court* order in 2001 in response to *his* paternity action. Until Timothy initiated the proceedings in the juvenile court and he was declared to be Nathan's biological father, he never had any court ordered duty to provide support. Thus, in 2006, Jon was merely asking the *juvenile court* to enforce its prior order. And when Jon filed his motion asking the juvenile court to enforce its child support order, Timothy failed to offer *any* evidence as to how he would be prejudiced, has been prejudiced, or has changed his position by Jon's action. Therefore, we find that the juvenile court did not abuse its discretion when it found that Jon was not barred by estoppel, waiver, or laches from asking the juvenile court to enforce its April 27, 2001 child support order.

{¶36} In addition, Timothy claims that Jon was barred from seeking child support from him under the doctrine of claim preclusion. "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as * * * estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action. *Fort Frye Teachers Assn., OEA/NEA v. State Emp.*

*Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140. Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter. *Grava*, 73 Ohio St.3d at 382. However, as we stated above, Timothy was never a party nor in privity with anyone in Jon and Stephanie's divorce action in the domestic relations court; therefore, claim preclusion is inapplicable and Timothy cannot claim Jon was barred from raising the issue of child support later in juvenile court based on this theory. *Smith*, 110 Ohio App.3d at 341-42. See, also, *Gatt*, 20 Ohio App.3d 285, paragraph one of syllabus; *Leguillon*, 124 Ohio App.3d at 767; *Fitzpatrick*, 126 Ohio App.3d at 483-84.

{¶37} Next, Timothy claims that Jon's claim is barred by another aspect of the doctrine of res judicata, known as inconsistent position, which states that "a party cannot be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to or inconsistent with one previously assumed by him." *Van Dyne v. Fidelity-Phenix Ins. Co.* (1969), 17 Ohio App.2d 116, 127, 244 N.E.2d 752. However, Jon's failure to assert his right to support from Timothy in domestic relations court is not inconsistent with Jon's request in juvenile court to enforce its order on Timothy to pay support for Nathan, when Timothy was never a party to the action in the domestic relations court and paternity was established in juvenile court.

**{¶38}** Finally, Timothy claims that according to R.C. 3111.15, only a mother in a paternity action may acquire retroactive support. R.C. 3111.15 deals with the enforcement of support orders, and in pertinent part provides:

> **(A)** **If the existence of the father and child relationship is declared or if paternity or a duty of support has been adjudicated under sections 3111.01 to 3111.18 of the Revised Code or under prior law, the obligation of the father may be enforced in the same or other proceedings by the mother, the child, or the public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support, or funeral,** *or by any other person*, **including a private agency, to the extent that any of them may furnish, has furnished, or is furnishing these expenses.**

(emphasis added). It is clear from the language of the statute that "any other person" that furnishes expenses for the support of a child, may seek enforcement of a support order against the adjudicated father. Even though Jon was not Nathan's biological father, from 2001 until 2006 Jon was Nathan's residential and legal custodian, and as such, provided expenses for the care and benefit of Nathan during those years. Thus, under the plain language of the statute, Jon was allowed to enforce the juvenile court child support order against Timothy.

**{¶39}** Therefore, Timothy's second assignment of error is overruled.

**{¶40}** We elect to address Stephanie's and Timothy's remaining assignments of error out of the order they were presented.

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING THE DAWSON'S MOTION TO REEXAMINE CHILD SUPPORT WITHOUT NOTICE OF HEARING AND WITHOUT HOLDING AN EVIDENTIARY HEARING ON THE MATTER, AND BY FAILING TO CALCULATE STOUT'S $135,000 SETTLEMENT AS INCOME FOR CHILD SUPPORT PURPOSES.**

{¶41} In their fourth assignments of error, Stephanie and Timothy argue that the trial court erred when it failed to hold a hearing on their "Motion to Retroactively and Prospectively Reexamine, Recalculate, Reconsider and Modify Child Support Based on Jon Stout's Retroactive Settlement With the Logan County Sheriff"; in addition, they argue that the trial court should have assessed Jon's settlement award as income in its calculation of child support.

{¶42} Essentially, Stephanie and Timothy claim that they discovered new evidence concerning an additional source to Jon's income after the magistrate's decision was rendered. In particular, they discovered that Jon had been given a settlement offer of $135,000.00 from the Logan County Sheriff's Office. Once they discovered this information, Stephanie and Timothy filed a "Motion to Retroactively and Prospectively Reexamine, Recalculate, Reconsider and Modify Child Support Based on Jon Stout's Retroactive Settlement With the Logan County Sheriff," which raised the issue that Jon's settlement should have been calculated as part of his "income" in the child support worksheet and schedule. In

addition to their motion, they attached a copy of the settlement offer between Jon and the Sheriff's Office, along with various newspaper articles detailing the progress and result of the parties' settlement. While Stephanie and Timothy never filed a motion requesting a hearing, nonetheless, they still argue that the trial court erred by not holding a hearing on their motion, and its failure to hold such a hearing violated their due process rights.

**{¶43}** In its final judgment entry, the trial court treated Stephanie and Timothy's motion as a motion to recalculate and modify the child support order based on an alleged one time monetary award given to Jon in a settlement with the Logan County Sheriff's Office. While the trial court indicated that Stephanie and Timothy had failed to present any evidence on this issue, it did go on to find that, "in any event such an amount would not be factored into a child support calculation because it is not a recurring source of compensation. * * * A one time lump sum payment would fall within the nonrecurring description of payment," which is specifically excluded from the definition of "gross income," which is the category that is submitted for the calculation of child support. (Mar. 31, 2009 JE at 25-26).

**{¶44}** We agree with the trial court that Jon's $135,000.00 settlement does not fall within the definition of "gross income," but rather is excluded from the calculation of child support because it is "nonrecurring or unsustainable income."

{¶45} This particular assignment of error involves the question of interpreting a statutory provision, thus, our review of a trial court's interpretation of a statute is conducted under a de novo standard of review since statutory interpretation is a matter of law. *State v. Wemer* (1996), 112 Ohio App.3d 100, 103, 677 N.E.2d 1258. Therefore, we review the decision without deference to the trial court's interpretation. Id.

{¶46} Under the prescribed child support worksheet and schedule pursuant to R.C. 3119.02 to R.C. 3119.24, gross income is the basis for calculating the standard child support amount, and includes the following:

> **"Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training**

**or other types of required drills; self-generated income; and potential cash flow from any source.**

R.C. 3119.01(C)(7). However, "gross income" does not include "nonrecurring or unsustainable income or cash flow items," which is more specifically defined as:

**an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. "Nonrecurring or unsustainable income or cash flow item" does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise uses to produce income or cash flow for a period of more than three years.**

R.C. 3119.01(C)(7)(e), (8). Here, Jon's settlement with the Logan County Sheriff's Office, while presumably given to Jon in compensation for the income he would have received had he not been fired, was still a one-time nonrecurring payment that Jon had no expectation of receiving on a continued basis. Thus, the $135,000.00 would not have been considered as "gross income" in calculating child support; therefore, the trial court did not err in failing to add it into the child support calculations.

**{¶47}** Stephanie's and Timothy's fourth assignments of error are, therefore, overruled.

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CORRELATE ITS ORDER REGARDING**

**RETROACTIVE AWARDS OF CHILD SUPPORT FOR NATHAN WITH A FINDING OF NATHAN'S PRESENT BEST INTEREST, AND BY FAILING TO ORDER CHILD SUPPORT FROM JON STOUT FOR NATHAN, AND BY FAILING TO CONSIDER THE OTHER CHILDREN'S BEST INTERESTS. NATHAN AND THE OTHER CHILDREN'S PRESENT BEST INTEREST WAS IGNORED BY THE TRIAL COURT.**

{¶48} In their third assignments of error, Timothy and Stephanie argue that the trial court erred by not considering the best interest of the children when it calculated the child support owed by each individual party with respect to all three children. They claim that under R.C. 3119.02 it requires that child support be calculated so that it is in the best interest of the children, not what is in the best interest of the parents.

{¶49} While we agree that R.C. 3119.02 states that child support orders shall be calculated to be "in the best interest of the children," there is a presumption under R.C. 3119.03 that if the trial court uses the figures generated from the prescribed child support worksheet and schedule, then the child support will be presumed to be correct. Furthermore, only when the trial court deviates from the figures generated from the child support worksheet is the trial court then statutorily required to make a specific finding that the worksheet calculation was unjust, inappropriate or would not have been in the best interest of the children. R.C. 3119.22. However, there is no statutory requirement that the trial court make reverse findings: that the amount of child support calculated through the

-31-

worksheet and schedule is just and appropriate, and is in the best interest of the children. *Lee v. Loos*, 5th Dist. No. 2004 AP 02 0015, 2005-Ohio-254, ¶16. See, also, R.C. 3119.22. Thus, there is a presumption that the amount calculated by the worksheet and schedule is in the best interest of the children. *Lee*, 2005-Ohio-254, at ¶16.

**{¶50}** Here, the only dispute Stephanie and Timothy raised regarding the trial court's calculations of child support was with respect to Jon's $135,000.00 settlement from the Logan County Sheriff's Office.[4] However, as we discussed above, the $135,000.00 settlement does not fall under the category of gross income, and thus, it was not to be included in the calculation of child support. Therefore, because the trial court's order of child support did not deviate from the amount calculated through the requisite worksheet and schedule, and there is a presumption that the amount calculated through the worksheet is correct, and Stephanie and Timothy do not raise any viable issues with respect to the trial court's child support calculations, we find that the trial court did not err by failing to find that the ordered amount of child support was in the children's best interests.

---

[4] In fact, this Court notes that during the October 2006 hearings, all of the parties stipulated to the figures submitted and used by the juvenile magistrate for purposes of calculating child support, including the fact that Jon was currently making less than his previous income at the Logan County Sheriff's Office. (Oct. 24, 2006 Tr. at 128-30); (Oct. 25, 2006 Tr. at 184).

{¶51} Timothy's and Stephanie's third assignments of error are, therefore, overruled.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND JON STOUT VOLUNTARILY UNDEREMPLOYED.**

{¶52} Under their fifth assignments of error, Stephanie and Timothy argue that the trial court abused its discretion when it found that Jon was not voluntarily underemployed. Essentially, they claim that the events which surrounded Jon's termination from the Logan County Sheriff's Department stemmed from Jon's voluntary actions, and that the trial court should have found that his misconduct caused his underemployment.

{¶53} In calculating child support, a trial court is permitted to impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. *Synder v. Synder*, 5th Dist. No. 2008CA00219, 2009-Ohio-5292, ¶29, citing R.C. 3119.01(C)(11). See, also, *Inscoe v. Inscoe* (1997), 121 Ohio App.3d 396, 424, 700 N.E.2d 70, citing *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus. In determining whether an individual is voluntarily underemployed or unemployed, the trial court must determine not only whether the change was voluntary, but also whether it was made with due regard to their income-producing abilities and their duty to provide for the continuing needs of

the child. *Synder*, 2009-Ohio-5292, at ¶29, quoting *Farrell v. Farrell*, 5th Dist. No. 2008-CA-0080, 2009-Ohio-1341, ¶20. Whether a parent is voluntarily unemployed or underemployed is a determination within the trial court's discretion and will be upheld absent an abuse of discretion. *Rock*, 67 Ohio St.3d at 112, applying former R.C. 3113.215. An abuse of discretion is more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶54} Hearings on the issue of child support were held on October 24 and 25, 2006. There was little testimony regarding the issue of Jon's termination at the Logan County Sheriff's Office and his subsequent employment at Crazy Scott's. There was testimony about allegations that Jon had engaged in an inappropriate relationship with a minor, and that criminal charges had been filed as a result of these allegations; however, there was no proof that any of these allegations were true or that they resulted in any convictions. (Oct. 23, 2006 Tr. at 95-98); (Oct. 24, 2006 Tr. at 90-105). In fact, there was evidence that some of the charges were dismissed against Jon. (Oct. 24, 2006 Tr. at 52). Moreover, while Jon admitted that he had been fired from the Logan County Sheriff's Office for insubordination and dishonesty, which stemmed from his refusal to take a polygraph examination, he continually denied that his termination by the Logan County Sheriff's Office was the result of his own actions or conduct. (Oct. 23, 2006 Tr. at 40-46); (Oct. 24,

2006 Tr. at 49); (Oct. 25, 2006 Tr. at 179-81). In addition, because he believed that his termination was not the result of his conduct or actions, he was fighting his former employer about the issue in civil court. (Oct. 25, 2006 Tr. at 179-81). And as the parties all agree in their briefs, this fight with the Logan County Sheriff's Office on the issue of his wrongful termination, eventually resulted in a settlement offer by the sheriff's office to Jon for $135,000.00.

{¶55} In its decision, the juvenile magistrate found that Jon currently worked at Crazy Scott's, earning $14.00 per hour, working forty hours per week, 52 weeks per year, for a total of $29,120.00. In its calculation of child support, the juvenile magistrate took Jon's annual gross income and added $3,780.00 in overtime and bonuses, which he had earned through his employment at Crazy Scott's. In addition, the juvenile magistrate found that "Jon Stout should not be considered voluntarily underemployed as a result of his termination from the Logan County Sheriff's Office and subsequent employ[sic] at Crazy Scott's." (Nov. 7, 2007 Mag. Dec.)

{¶56} Stephanie and Timothy objected to the juvenile magistrate's finding arguing that Jon's income should have been based on his prior income, which was higher at the Logan County Sheriff's Office, rather than his income at Crazy Scott's. They argued that it was irrelevant whether Jon was ultimately convicted because it was through his own voluntary actions (his choice to have improper

conduct with a minor) that lead to his subsequent termination. The trial court found that Stephanie and Timothy had failed to present any evidence that Jon was ever found guilty and incarcerated for any criminal conduct; rather, the trial court stated that the evidence in the record indicated that that Jon's income was involuntarily reduced. (Mar. 31, 2009 JE at 5-6). Thus, it concluded that the juvenile magistrate did not err in finding that Jon was not underemployed, and that his then current salary at Crazy Scott's was the appropriate figure to use in the child support calculations. (Id.).

{¶57} After a review of the record, we find that the trial court's finding that the evidence failed to demonstrate that Jon was voluntarily underemployed was reasonable and not an abuse of discretion. While Stephanie and Timothy argue that Jon's termination from the Logan County Sheriff's Office was the result from his voluntary decision to engage in an inappropriate relationship with a minor, there is absolutely no evidence in the record that these allegations were true.[5] Conversely, there is evidence that Jon's termination from the Logan County Sheriff's Office was anything but voluntary: he continually denied the validity of the allegations, and he filed a civil law suit against his former employer for wrongful termination, which resulted in a settlement award of $135,000.00.

---

[5] While the parties briefly mention that Jon pled guilty to a misdemeanor offense of attempted child endangerment, we note that there is no formal evidence in the record that corroborates this statement.

Therefore, we find that the trial court did not abuse its discretion when it found that Jon was not voluntarily underemployed.

{¶58} Stephanie's and Timothy's fifth assignments of error are, therefore, overruled.

**ASSIGNMENT OF ERROR NO VI**

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO AWARD THE TAX DEPENDENCY EXEMPTIONS FOR THE CHILDREN AT ISSUE TO THE DAWSONS, AS THE DAWSONS WOULD DERIVE THE GREATER TAX BENEFIT BY CLAIMING THEM, AND THIS WOULD BE IN THE CHILDREN'S BEST INTEREST.**

{¶59} In their last assignments of error, Stephanie and Timothy argue that the trial court abused its discretion when it failed to award them the tax dependency exemptions for the three children, because they would derive the greater tax benefit by claiming them, and it would also be in the best interest of the children. Specifically, they argue that the trial court was required to consider "all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." See *Singer v. Dickinson* (1992), 63 Ohio St.3d 408, 411, 588 N.E.2d 806. Because the trial court did not consider any of these factors when awarding the exemptions, Stephanie and Timothy claim that the trial court abused its discretion.

{¶60} A trial court's decision in awarding the federal income tax dependency exemption is governed by R.C. 3119.82, which states in pertinent part:

> **[w]henever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * * If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, *may* permit the parent who is *not the residential parent and legal custodian* to claim the children as dependents for federal income tax purposes *only* if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.**

(emphasis added). With respect to this provision, this Court has previously stated that "the trial court is not required to engage in *any* analysis under the statute [R.C. 3119.82] unless it chooses to award the tax exemption to the non-residential parent." *Siefker v. Siefker*, 3d Dist. No. 12-06-04, 2006-Ohio-5154, ¶10, quoting *Fisher v. Fisher*, 3d Dist. No. 7-05-03, 2005-Ohio-5615, ¶25, citing R.C. 3119.82.

Here, with respect to Nathan, the juvenile magistrate stated that Jon was to receive the federal tax dependency exemption for Nathan in the year 2000, 2001, 2002, 2003, 2004, and 2005. However, because Timothy and Stephanie were named the residential and legal custodians of Nathan on May 3, 2006 (when legal custody of Nathan was consistently and continuously removed from Jon), and because Timothy and Stephanie were married and resided with one another, the juvenile magistrate stated that the tax dependency exemption should be divided equally between the Dawsons starting in 2006: Stephanie receiving the tax dependency exemption on every even-numbered year, and Timothy receiving the tax dependency exemption on every odd-numbered year. Because Jon was named Nathan's sole residential and legal custodian from 2000-2005, and on May 3, 2006, Stephanie and Timothy were named the residential and legal custodians of Nathan, the juvenile magistrate gave the tax dependency exemption for Nathan to whichever person(s) was named the residential parent at that moment in time; therefore, it was not required to undertake any analysis in its tax dependency exemption determination.

{¶61} Similarly, with respect to Kylie and Trevor, pursuant to the juvenile magistrate's order finding that there was not a sufficient change of circumstances to warrant a modification of the March 8, 2001 domestic relations court order (which designated Jon the sole residential and legal custodian of all three

children), the juvenile magistrate awarded Jon the tax dependency exemptions for Trevor and Kylie for the year 2006 and every year thereafter until further order of the court. Because Jon was still the sole residential and legal custodian of Trevor and Kylie, the juvenile magistrate was not required to undertake any analysis when it awarded him the tax dependency exemptions for Trevor and Kylie for the year 2006 and thereafter.

{¶62} Timothy's and Stephanie's sixth assignments of error are, therefore, overruled.

{¶63} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgments Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jnc**